ROBERT M. NESMITH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Nesmith v. Commissioner
Docket No. 13849-78.
United States Tax Court
T.C. Memo 1981-561; 1981 Tax Ct. Memo LEXIS 184; 42 T.C.M. (CCH) 1269; T.C.M. (RIA) 81561; September 29, 1981. *184 Petitioner filed false and fraudulent original income tax returns for 1970, 1971, and 1972. On December 14, 1973, petitioner filed nonfraudulent amended returns for 1970 and 1972, and on December 17, 1973, petitioner filed a nonfraudulent amended return for 1971. The Commissioner, more than three years after filing all of the amended returns and more than six years after filing the original returns for 1970 and 1971, mailed a statutory notice of deficiency to petitioner covering all three taxable years. The Commissioner, more than six years after filing the original returns for 1970, assessed the taxes shown on the amended returns for all three years. Held, The filing of the amended returns commenced the running of the three-year period of limitations on assessment; therefore, assessment of additional tax is barred by the statute of limitations because the statutory notice was not mailed by the Commissioner within that three-year period. Klemp v. Commissioner, 77 T.C.     (Aug. 5, 1981), followed. Held further, the six-year period of limitations provided in sec. 6501(e), I.R.C. 1954, did not apply. Klemp v. Commissioner, supra, followed. Held further , for purposes of the period *185 of limitations which limits the amount of refund or credit of taxes that may be allowed where an overpayment is determined, payment of the tax was made when respondent assessed the tax, so that petitioner is entitled to a refund of such overpayments. Robert I. White and Larry A. Campagna, for the petitioner. John F. Eiman, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined the following deficiencies in and additions to the petitioner's Federal income tax: Addition to Tax [1]
Year
Deficiency
Sec. 6653(b), [2] I.R.C. 1954
1970
$ 72.27
$ 3,043.96
1971
112.29
3,283.66
1972
142.26
4,585.30 The issues for decision are: (1) whether the filing of nonfraudulent amended returns, subsequent to the filing of fraudulent returns, commenced the running of the three-year period of limitations in section 6501(a) *186 so as to bar the assessment and collection of the proposed deficiencies and the additions to tax for fraud for the taxable years 1970, 1971, and 1972, or whether assessment and collection are timely under either section 6501(c)(1) or under section 6501(e) and 6501(c)(4); (2) whether this Court has jurisdiction to determine an overpayment of taxes by petitioner, and, if so, whether petitioner overpaid his Federal income taxes; and (3) to what extent, if any, is refund of the overpayment barred by the statute of limitations. FINDINGS OF FACT Most of the facts have been stipulated. The stipulations of facts and attached exhibits are incorporated herein by this reference. Petitioner Robert M. Nesmith resided in Leander, Texas, when is filed his petition in this case. Petitioner and his wife timely filed joint Federal income tax returns for the taxable years 1970, 1971, and 1972. (These returns will be referred to as petitioner's "original" returns.) For purposes of this case the petitioner concedes the fraudulent nature of his original returns. On June 5, 1973, a representative of the Commissioner contacted petitioner regarding examination of petitioner's and his wife's 1971 income *187 tax return. The examination was soon extended to the taxable years 1970 and 1972. Petitioner contacted an attorney to provide him legal counsel concerning the examination of the original returns. This attorney advised the petitioner to "lay low" and not cooperate with the government. The attorney even suggested that petitioner plead the Fifth Amendment. Petitioner became very nervous and upset about following this advice. Petitioner told his attorney that he did not want to handle the case in the manner advised but that he wanted to "get to the truth of these returns and get them made up right." When the attorney did not agree to cooperate with petitioner's intended action, petitioner dismissed him. Petitioner asked one of his relatives, who is an attorney, to recommend new counsel. The relative referred petitioner to Robert I. White. Petitioner contacted Mr. White in October of 1973. Mr. White immediately contacted a representative of the Commissioner to meet regarding petitioner's audit. This action pleaded petitioner. In talking with petitioner about the matter, Mr. White learned that the original returns had not been prepared from books and records but rather from estimates. *188 Mr. White recommended that he and petitioner engage a CPA to prepare proper books and records from petitioner's bank records and other documents. This was done. Petitioner worked closely with Mr. White and the CPA to prepare an accurate account of income and expenses for the taxable years in issue. After these books and records were prepared and after petitioner reviewed them, petitioner authorized Mr. White to have true and accurate amended returns prepared, which he did. Petitioner intended to file accurate returns and fully pay his Federal income taxes. The petitioner and his wife signed these amended returns (the "amended" returns) and filed them. The Director, Austin Service Center, received the amended 1970 and 1972 returns on December 14, 1973, and the amended 1971 return on December 17, 1973. These amended returns reported additional taxable income which resulted in additional income tax liability in the following amounts, which were remitted with the amended returns: Taxable Year
Amount
1970
$ 6,978.14
1971
7,100.53
1972
9,389.47
The Commissioner notified the petitioner and his wife by letters dated February 12, 1974, and January 31, 1975, that the funds would be held by the *189 Commissioner as cash bonds for payment of taxes, if any, that might be assessed at a later date. These letters indicated that for a period of 30 days subsequent to such notification, the petitioner could request a return of the funds held as a cash bond. No claim for refund was appropriate at that time because the cash bond was not applied as payment of any assessment of any taxes for any year. The petitioner and his counsel cooperated with the Commissioner's investigation by providing both petitioner's bank records and the accountant's workpapers that were used to prepare the amended returns as well as by making the petitioner and the CPA available for interviews and statements. The Commissioner analyzed petitioner's bank records and determined, by April 22, 1974, that the amended returns were correct and accurate in every material way. [3] Mr. White, acting for petitioner pursuant to a power of attorney, executed a series of four agreements extending the period of limitations on assessment and collection. The first agreement extended the period for assessment of Federal income tax due from petitioner *190 for the taxable year 1970 to April 15, 1975. The second agreement extended the period for assessment of petitioner's 1970 Federal income tax liability to December 31, 1977, but was conditioned on the applicability of the six-year period of limitations under section 6501(e). The third agreement similarly extended the period for assessment of 1970 and 1971 tax liability to June 30, 1978, and was also conditional on the applicability of section 6501(e). The fourth and final agreement executed by the petitioner on March 29, 1978, and by the Commissioner on April 3, 1978, extended the period for assessment of the Federal income tax liability of petitioner for the taxable year 1970, 1971, and 1972 to December 31, 1978. Petitioner omitted from the original returns filed for himself and his wife gross income in excess of 25 percent of gross income stated on the returns. The respondent assessed the taxes shown to be due on the amended returns on November 18, 1977. On December 1, 1978, the Commissioner mailed a statutory notice to petitioner and his wife in which he disallowed deductions claimed for contributions to a retirement plan and in which he determined that petitioner was liable *191 for addition to tax under section 6653(b). ULTIMATE FINDINGS OF FACT Petitioner did not intend to defeat or evade the income tax when he filed his amended returns for the taxable years 1970, 1971, and 1972. OPINION The first issue concerns whether the assessment and collection of the proposed deficiencies in tax and additions to tax for the taxable years 1970, 1971, and 1972 were barred by the running of the period of limitations when the Commissioner mailed his statutory notice of deficiency. [4] The pertinent parts of section 6501 provide as follows [5] *192 : SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION. (a) GENERAL RULE.--Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) * * *. (c) EXCEPTIONS.-- (1) FALSE RETURN.--In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time. (e) SUBSTANTIAL OMISSION OF ITEMS.--Except as otherwise provided in subsection (c)-- (1) INCOME TAXES.--In the case of any tax imposed by subtitle A-- (A) GENERAL RULE.--If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without *193 assessment, at any time within 6 years after the return was filed. * * * Petitioner argues that his filing of nonfraudulent amended returns subsequent to his filing of fraudulent original returns invoked the three-year period of limitations in section 6501(a), and the three-year period of limitations commenced to run upon the filing of the amended returns. Respondent argues that the applicable period of limitations was determined by the nature of the fraudulent original returns and was the unlimited period provided by section 6501(c)(1). It is uncontroverted that the statutory notice was mailed after the general three-year period of limitations, whether that period begins to run from the time of filing either the original or the amended returns. Respondent has the burden of proving that the period of limitation is other than the three-year general rule, e.g., Farmers Feed Co. v. Commissioner, 10 B.T.A. 1069 (1928). Respondent contends that no language in section 6501 and no subsequent action by petitiner rendered section 6501(c)(1) inapplicable or served to bring section 6501(a) into operation. Respondent also argues that the petitioner omitted from gross income amounts in excess *194 of 25 percent of the gross income stated in the original returns, so that the period of limitations is at least six years from the original return and thus the mailing of the statutory notice was timely as to the taxable years 1970 and 1971 because of the agreed-to extensions of the period for assessment. [6]
We recently decided this same question in the petitioner's favor in an opinion that involved a factual situation almost identical to the present one. Klemp v. Commissioner, 77 T.C.     (Aug. 5, 1981). Our decision in Klemp is dispositive of the first issue in the present case. We, therefore, hold that the periods of limitations on assessment and collection of the proposed deficiencies *195 and additions to tax determined by respondent for the taxable years 1970, 1971, and 1972 expired before the mailing of the statutory notice of deficiency.
The second issue for decision is whether there exists an overpayment of tax. Respondent challenges this Court's jurisdiction to consider whether an overpayment might be due to petitioner. We will first consider the jurisdiction issue.The pertinent portions of sections 6512 and 6511 provide as follows: SEC. 6512. LIMITATIONS IN CASE OF PETITION TO TAX COURT. (a) EFFECT OF PETITION TO TAX COURT.--If the Secretary has mailed to the taxpayer a notice of deficiency under section 6212(a) * * * and if the taxpayer files a petition with the Tax Court within the time prescribed in section 6213(a), no credit or refund of income tax for the same taxable year * * * in respect of which the Secretary has determined the deficiency shall be allowed or made and no suit by the taxpayer for the recovery of any part of the tax shall be instituted in any court except-- (1) As to overpayments determined by a decision of the Tax Court which has become final; and (2) As to any amount collected in excess of an amount computed in accordance with the decision *196 of the Tax Court which has become final; and (3) As to any amount collected after the period of limitation upon the making of levy or beginning proceeding in court for collection has expired; but in any such claim for credit or refund or in any such suit for refund the decision of the Tax Court which has become final, as to whether such period has expired before the notice of deficiency was mailed, shall be conclusive. (b) OVERPAYMENT DETERMINED BY TAX COURT.-- (1) JURISDICTION TO DETERMINE.-- * * * if the Tax Court finds that there is no deficiency and further finds that the taxpayer has made an overpayment of income tax for the same taxable year * * * in respect of which the Secretary determined the deficiency, or finds that there is a deficiency but that the taxpayer has made an overpayment of such tax, the Tax Court shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Tax Court has become final, be credited or refunded to the taxpayer. (2) LIMIT ON AMOUNT OF CREDIT OR REFUND.--No such credit or refund shall be allowed or made of any portion of the tax unless the Tax Court determines as part of its decision that such *197 portion was paid-- (B) within the period which be applicable under section 6511(b)(2), (c), (d), or (g), if on the date of the mailing of the notice of deficiency a claim had been filed (whether or not filed) stating the grounds upon which the Tax Court finds that there is an overpayment * * *. SEC. 6511. LIMITATION ON CREDIT OR REFUND. (b) LIMITATION ON ALLOWANCE OF CREDITS AND REFUNDS.-- (2) LIMIT OF AMOUNT OF CREDIT OR REFUND.-- (B) LIMIT WHERE CLAIM NOT FILED WITHIN 3-YEAR PERIOD.--If the claim was not filed within such 3-year period, the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim. When the Commissioner mails the taxpayer a notice of deficiency and the taxpayer timely files a petition with the Tax Court, section 6512(a) authorizes credits and refunds as to overpayments determined by a decision of the Tax Court. Such an overpayment is refundable to the taxpayer when the decision of the Tax Court become final. [7] The Tax Court's authority to determine an overpayment is found in section 6512(b)(1) which requires that the Tax Court first find whether a deficiency exists and whether *198 the taxpayer has made an overpayment. We have already found that no deficiency exists. Section 6401 provides in pertinent part that: SEC. 6401.AMOUNTS TREATED AS OVERPAYMENTS. (a) ASSESSMENT AND COLLECTION AFTER LIMITATION PERIOD.--The term "overpayment" includes that part of the amount of the payment of any internal revenue tax which is assessed or collected after the expiration of the period of limitation properly applicable thereto. The taxes remitted with the amended returns were assessed after the expiration of the three-year period of limitations on assessment under section 6501(a), which applied to these taxable years, so that these funds constitute overpayments under section 6401(a). This Court, therefore, has jurisdiction under section 6512(b)(1) to determine the amount of the overpayment which must be refunded to petitioner. Section 6512(b)(2) limits the amount of such credit or refund to only that portion paid either after the deficiency notice is mailed or within the period of limitations for filing a refund claim under section 6511(b)(2), (c), (d), or (g) which could have been refundable if a *199 claim had been filed on the date the notice of deficiency was mailed, or under certain specified conditions, where a timely refund claim was actually filed. Respondent's jurisdictional argument is that the requirements of section 6512 are not met because the tax liabilities were not paid within any of the time periods specified under section 6511 as they relate to the limit on the amount of any credit or refund in section 6512(b)(2)(B). This Court must determine what amount of petitioner's tax was paid within the time periods specified under sections 6511 and 6512(b)(2)(B) in order to determine the amount of petitioner's refundable overpayments. This determination depends on the meaning of the word "paid" for purposes of these limitation statutes. Petitioner maintains that the amounts which he remitted with the amended returns were "paid" on November 18, 1977, when the respondent assessed the taxes shown as due on the amended returns, so that the payments were made within two years of the mailing of the notice of deficiency on December 1, 1978. It would follow, then, that such payments would be refundable under section 6512(b)(2)(B) because the payments were made within the two *200 years immediately preceding the mailing of the notice of deficiency under section 6511(b)(2)(B). Under section 6512(b)(2)(B) a claim for refund is deemed to be filed on the date of the mailing of the notice of deficiency. Respondent contends that a remittance prior to assessment by the Commissioner is a payment which will begin the running of the period of limitations under section 6511 if the remittance is intended to satisfy a defined tax liability, which respondent suggests is present when a taxpayer states a liability on his return. Under this interpretation of "payment" the amounts which petitioner remitted with his amended returns would not have been "paid" within any of the time periods in section 6511 referred to in section 6512(b)(2)(B) and refund of such payments would be barred. The Supreme Court addressed a similar issue in Rosenman v. United States, 323 U.S. 658 (1945). That case involved the collection of federal estate taxes. The taxpayer remitted sums under protest which the government placed in a suspense account rather than assessing the tax and applying the remittance against the assessment. Allowance of the taxpayer's refund depended on when the tax was "paid," *201 whether on the date of remittance or on the subsequent date of assessment. The Court held that payment was made on the date of assessment. Prior to that time the Commissioner held the sums remitted in a suspense account, as the Commissioner did in the case before us. This was apparently done because the sums were remitted under protest. The Supreme Court explained that: Money in these accounts is held not as taxes duly collected are held but as a deposit made in the nature of a cash bond for the payment of taxes thereafter found to be due.* * * [Rosenman v. United States, 323 U.S. at 662.] This is precisely the action that the Commissioner stated, in his letters to petitioner herein of February 12, 1974, and January 31, 1975, he was taking regarding the petitioner's remittance which accompanied his amended returns. In addition, the Supreme Court in Rosenman explained why payment must be considered to be made at the time of assessment, for purposes of the period of limitations on suits for refunds: It is this erroneous assessment that gave rise to a claim for refund. Not until then was there such a claim as could start the time running for presenting the claim. In any responsible *202 sense payment was then made * * *. [Rosenman v. United States, 323 U.S. at 661.] The Supreme Court's decision in Rosenman was followed by the Fifth Circuit in Thomas v. Mercantile Nat. Bank at Dallas, 204 F.2d 943 (5th Cir. 1953). Thomas also concerned a claim for refund of federal estate taxes. In affirming the District Court's holding that the claim for refund was timely because the date of payment was the date of assessment, the Fifth Circuit explained that: Until the Commissioner certified the assessment list * * * there was no deficiency assessment, and no liability on the part of the taxpayer, and consequently nothing to pay * * *. It would be illogical to hold, as the United States contends, that the statute of limitation began to run against a claim for refund before the deficiency itself came into existence, and before the fact that there was an overpayment, and if so the amount thereof, became ascertainable. [Thomas v. Mercantile Nat. Bank at Dallas, 204 F.2d at 944.] In Rosenman, as in the instant case, the Commissioner placed the sums remitted in a suspense account. The Fifth Circuit in Thomas, however, explained that: The fact that in the Rosenman case the funds were *203 placed in a suspense account, and not, as here, credited directly to the account of the taxpayer, does not alter the situation.* * * [Thomas v. Mercantile Nat. Bank at Dallas, 204 F.2d at 944.] Although the period of limitations may now be a different length of time or may now be expressed in a slightly different but essentially similar framework than at the time of the Rosenman and Thomas decisions, these differences have no substantive effect on the issue of when payment is determined to have occurred. Under the rule of Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 455 F.2d 985 (10th Cir. 1971), we will follow the decisions of a United States Court of Appeals to which a case before us is appealable which are squarely in point with such case. Golsen v. Commissioner, 54 T.C. at 757. This is such a case.[8] *204 We are compelled by the decision in Thomas to hold that in this case, for the purposes of the period of limitations limiting the amount of refund or credit that may be allowed where an overpayment is determined, payment of the tax was made when the tax was assessed. [9] We hold for petitioner. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. The additions to tax are larger than the deficiencies because the deficiencies are based on the amended returns while the additions to tax are based on the original returns. The additions to tax are determined against Robert M. Nesmith only and not against Dixie L. Nesmith. ↩
2. All section references are to the Internal Revenue Code of 1954, as amended.↩
3. The deficiencies result from the disallowance of deductions to a retirement plan.↩
4. Petitioner does not contest the amount of proposed deficiencies and additions to tax if assessment and collection are not barred. ↩
5. Section 250(d) of the Revenue Act of 1921, ch. 136, 42 Stat. 265, for the first time provided for a period of limitations on assessment and collection of taxes. Section 250(d) required the Commissioner of Internal Revenue to determine and assess taxes within four years after a return was filed. With respect to a false or fraudulent return or a failure to file a required return, section 250(d) retained the prior rule that no period of limitations for determining and assessing taxes was begun. Now, of course, the three-year period in section 6501(a) replaces the previous four-year period of section 250(d) and section 6501(c)(1)↩ continues the previous rule that no period of limitation is begun by filing a false or fraudulent return.
6. These agreements extending the period of limitations are valid only to the extent that the six-year period under section 6501(e) applies because the second and third agreements were so conditioned and because the validity of the fourth agreement required that the period of limitations be open when it was executed. Only the six-year period of limitations remained open at the time of the execution of the fourth agreement and, therefore, only such period was capable of being extended. Sec. 6501(d)(4)↩.
7. To determine when a Tax Court decision has become final, see sec. 7481.↩
8. The Fifth Circuit recently reaffirmed the precedential value of Thomas v. Mercantile Nat. Bank at Dallas, 204 F.2d 943 (5th Cir. 1953), in Ford v. United States, 618 F.2d 357 (5th Cir. 1980). The panel in that case expressed doubts about the rule but refused to overturn the decision of a previous Fifth Circuit panel because such as action required the decision of the Circuit enbanc. The doubts of the Fifth Circuit panel were apparently created by decisions of other courts finding that the date of assessment does not always control for all purposes, notably in the area of when interest begins to run against the government.E.g., Fortugno v. Commissioner, 353 F.2d 429 (3d Cir. 1965), cert. dismissed 385 U.S. 954↩ (1966). 9. But compare, Dowell v. Commissioner, T.C. Memo. 1980-515↩.