693 F.2d 298
 82-2 USTC P 9697
 Ernest BADARACCO, Sr. and Rose Badaracco, Ernest Badaracco,
Jr. and Barbara Badaracco,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellant in No. 81-3033.
DELEET MERCHANDISING CORP.
v.
UNITED STATES of America, Appellant in No. 82-5171.
 Nos. 81-3033, 82-5171.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 16, 1982.
Decided Nov. 29, 1982.
 
 Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Gary R. Allen, John A. Dudeck, Jr. (argued), Tax Division, Dept. of Justice, Washington, D.C., for appellant in No. 81-3033.
 Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Gary R. Allen, John A. Dudeck, Jr. (argued), Tax Division, Dept. of Justice, Washington, D.C., for appellant in No. 82-5171.
 Starr, Weinberg & Fradkin, Roseland, N.J., for appellees in No. 81-3033; John J. O'Toole (argued), Roseland, N.J., of counsel.
 Fredericks & Messinger, Hackensack, N.J., and Goldschmidt, Fredericks & Oshatz, New York City, for appellee in No. 82-5171; Barry I. Fredericks (argued), Richard H. Waxman, S. Timothy Ball, New York City, of counsel.
 Before ADAMS, HUNTER and BECKER, Circuit Judges.
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 These two appeals[1] concern the effect of filing nonfraudulent, amended income tax returns, subsequent to the filing of fraudulent original returns, on the statute of limitations provisions of 26 U.S.C. Sec. 6501.[2]
 
 I.
 
 2
 The facts in each proceeding are undisputed.[3] In the first case, Ernest Badaracco, Sr. and Ernest Badaracco, Jr. were equal partners in an electrical contracting business, Badaracco Brothers and Company. They filed individual and partnership returns for the years 1965 to 1969, which fraudulently understated their taxable income. After federal grand juries subpoenaed the partnership's books and records, the taxpayers, on August 17, 1971, filed amended returns for each of the years in question. Three months later, on November 17, 1971, the Badaraccos were indicted on fifteen counts under 26 U.S.C. Sec. 7206(1) for filing false and fraudulent income tax returns for the years 1965 to 1969. They each entered a plea of guilty to the charge of filing a false and fraudulent partnership tax return for 1967, and the district court entered a judgment of conviction on June 6, 1973. United States v. Badaracco, (N.J.Crim. No. 766-71). The remaining counts of the indictment were dismissed. Four and one-half years after the conviction, the Commissioner of Internal Revenue issued deficiency notices for each of the five years in question. The Badaraccos asserted that the Commissioner's action was time-barred by 26 U.S.C. Sec. 6501(a), because more than three years had passed since the filing of their non-fraudulent, amended returns. The Tax Court agreed, and the Commissioner appealed to this Court.
 
 
 3
 In the second case, Deleet Merchandising Corporation ("Deleet") filed timely corporate income tax returns for the years 1967 and 1968. Amended returns for these years were then filed on August 9, 1973. Following lengthy criminal and civil investigations, the Internal Revenue Service ("I.R.S.") issued a notice of deficiency to Deleet on December 14, 1979 for the years 1967 and 1968. The taxpayer paid the deficiencies and penalties assessed on or about December 27, 1979, and then filed a complaint in district court to recover those monies. On December 14, 1981, Deleet moved for summary judgment on the ground that even if the original returns had been fraudulent, the deficiencies and penalties could not be assessed more than three years after the filing of a non-fraudulent amended return. The district court, 535 F.Supp. 402, granted the motion and the Commissioner appealed.
 
 II.
 
 4
 To support their claims that the three year statute of limitations has run, the taxpayers rely principally on Dowell v. Commissioner, 614 F.2d 1263 (10th Cir.1980), and the cases which have followed it. Britton v. U.S., 532 F.Supp. 275 (D.Vt.1981), aff'd without opinion (2d Cir. April 15, 1982); Klemp v. Commissioner, 77 T.C. 201 (1981), on appeal (9th Cir. No. 81-7744); see also, Espinoza v. Commissioner, 78 T.C. 412 (1982); Kramer v. Commissioner, 44 T.C.M. (CCH) 42 (1982); Elliott Liroff v. Commissioner, 44 T.C.M. (CCH) 42 (1982); Deyel v. Commissioner, 44 T.C.M. (CCH) 45 (1982); Richard B. Liroff v. Commissioner, 44 T.C.M. (CCH) 47 (1982); Nesmith v. Commissioner, 42 T.C.M. (CCH) 1269 (1981); appeal docketed, No. 82-4162 (5th Cir. April 29, 1982) (all following Klemp). The Dowell court held that a fraudulent return was in effect no return at all, because the taxpayer had failed to evince "an honest and genuine effort to satisfy the law" within the meaning of Zellerbach Paper Co. v. Helvering, 293 U.S. 172, 55 S.Ct. 127, 79 L.Ed. 264 (1934), and John D. Alkire Inv. Co. v. Nicholas, 114 F.2d 607 (10th Cir.1940).[4] It then reasoned that the filing of a non-fraudulent, amended return subsequent to the filing of a false and fraudulent original return would have exactly the same effect as the filing of a late original return following the fraudulent failure to file any return at all. Because in Bennett v. Commissioner, 30 T.C. 114 (1958), acq. 1958-2, C.B. 3, the Tax Court had held that the late filing of a non-fraudulent return began the running of the general three year statute of limitations, the court in Dowell concluded that the filing of a non-fraudulent amended return after the filing of an original fraudulent return also started the running of the limitations period. We disagree.
 
 
 5
 Section 6501(c)(1) is clear on its face. It permits the Commissioner "[i]n the case of a false or fraudulent return with the intent to evade tax" to assess the tax or proceed in court without an assessment "at any time." 26 U.S.C. Sec. 6501(c)(1) (emphasis added). There is nothing in the statute, its legislative history, or the regulations to indicate that the subsequent filing of an amended return has any effect on this provision.[5]
 
 
 6
 Original returns which are filed late, in contrast, are dealt with explicitly in section 6501(a):
 
 
 7
 Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed ).
 
 
 8
 (Emphasis added.) There is no comparable language relating to fraudulent original returns, and we have no reason to believe that Congress acted inadvertently when it treated the two situations differently.[6]
 
 III.
 
 9
 Section 6501, as the district court noted in Britton v. United States, "balances the policy of repose to the taxpayer with the purpose of providing the Commissioner of Internal Revenue adequate time to assess taxes and deficiencies." 532 F.Supp. at 278. We find no evidence that Congress struck that balance in such a way as to permit the Commissioner only three years to proceed against persons who filed fraudulent original returns and later submitted non-fraudulent amended returns.
 
 
 10
 According to the taxpayers, if a citizen has alerted the government to problems with an original tax return by filing an amended return, there is no need to permit the Commissioner unlimited time to assess taxes and deficiencies; furthermore, treating repentant and unrepentant tax evaders alike under section 6501(c)(1) removes all incentive for taxpayers to amend their fraudulent returns. They also assert that to allow the I.R.S. unlimited time to dangle the threat of prosecution, like the sword of Damocles, over the heads of persons who have filed amended returns is to invite abuse.[7] The relevant question, however, is not whether it would be wise for Congress to create incentives for filing amended returns after fraudulent returns were filed or to restrict the ability of the Commissioner to assess taxes at any time, but rather whether Congress, in fact, did so. We are limited to interpreting the statute before us. It is not our role to set tax policy.
 
 
 11
 Not only is the language of this section of the statute relating to fraudulent returns clear, but nothing in the structure of the Internal Revenue Code leads us to believe that Congress intended parties who filed fraudulent returns to be permitted to take advantage of the general three year statute of limitations. The willful filing of fraudulent returns with intent to evade tax is consistently treated as the most serious form of tax evasion. A person who commits such fraud subjects himself to major civil and criminal penalties. He cannot escape those penalties or eradicate the fraud merely by filing a non-fraudulent amended return.
 
 
 12
 The Commissioner has six years to assess deficiencies against taxpayers who omit more than 25 percent of their gross income from their original returns.[8] Amended returns have no effect on the six year period. Houston v. Commissioner, 38 T.C. 486 (1962); Goldring v. Commissioner, 20 T.C. 79 (1953). If, therefore, section 6501 were read as the taxpayers in these appeals urge us to do, we would create a situation in which persons who committed willful, deliberate fraud would be in a better position than those who, without an intent to commit fraud, had omitted more than 25 percent of their gross income from their original returns. There is no basis for concluding that in the single area of the statute of limitations Congress intended so to favor persons or corporations that have perpetrated tax fraud.
 
 
 13
 Moreover, the I.R.S. has advanced strong reasons for believing that a three year limitations period is not adequate to permit the Commissioner to meet his dual responsibility of proceeding both civilly and criminally. Cf. United States v. LaSalle National Bank, 437 U.S. 298, 308-309, 98 S.Ct. 2357, 2363-2364, 57 L.Ed.2d 221 (1978). It has long been the policy of the I.R.S. to defer civil assessment and collection until the completion of criminal proceedings. See, e.g., Policy Statement P-4-84, 1 Administration, CCH Internal Revenue Manual, p 1218; IV Audit, CCH Internal Revenue Manual, paragraphs 4565.32(2) and 4565.42. This policy, which the Fifth Circuit characterized as both "necessary and wise," Campbell v. Eastland, 307 F.2d 478, 487 (5th Cir.1962), permits the I.R.S. to avoid the serious constitutional problems that could be created by simultaneous proceedings, problems which can limit, for example, the availability of the ordinary tools for investigating civil tax liability once the commitment is made to refer a case for criminal prosecution. U.S. v. LaSalle National Bank, supra.
 
 
 14
 It is, furthermore, simply not the case that once an amended return is filed, the Commissioner can easily discover the fraud in the original return. The I.R.S. faces a heavy burden of proof in fraud cases, and thorough investigation of such frauds is a time-consuming process. Klemp v. Commissioner, 77 T.C. 201, 212-213 (1981) (Parker, J. dissenting). When passing the Act, Congress certainly knew of I.R.S. procedures and of the problems involved in ferreting out fraud. There is nothing to indicate that Congress intended to imply a term, absent in the statute itself, that would force the Commissioner to decide to proceed with only civil or criminal remedies or to jeopardize both by going forward civilly and criminally at the same time.
 
 IV.
 
 15
 As Learned Hand reminded us, "[t]here is no surer guide in the interpretation of a statute than its purpose when that is sufficiently disclosed." F.D.I.C. v. Tremaire, 133 F.2d 827, 830 (2d Cir.1943). But the courts in their search for the true purpose of Congress should not lightly go beyond the plain language of the statutes they are supposed to be interpreting and arrogate to themselves the power to divine in oracular fashion which among constitutionally permissible alternatives is the appropriate one.
 
 
 16
 The decision of the Tax Court in Badaracco and the judgment of the district court in Deleet will be reversed, and these cases will be remanded for further proceedings consistent with this opinion.
 
 JAMES HUNTER, III, Circuit Judge, dissenting:
 
 17
 The majority holds that the filing of a non-fraudulent amended return after the filing of a fraudulent original return does not start the running of the three year statute of limitations in I.R.C. Sec. 6501(a) (1976) for the assessment of tax. I respectfully dissent.
 
 
 18
 The underlying facts involved in these appeals are not in dispute. In both cases, taxpayers originally filed fraudulent tax returns with the Commissioner. They later filed amended returns covering the same taxable periods. The Commissioner concedes that the amended returns were non-fraudulent and that they contained all the information the law required in the original filings. Over six years after the filing of the amended returns, the Commissioner issued deficiency notices for taxes allegedly owed by the taxpayers. Taxpayers sought relief,[1] arguing that the Commissioner's actions were barred by I.R.C. Sec. 6501(a) (1976), which requires the Commissioner to initiate the assessment and collection of tax within three years of the filing of a return. The Commissioner argued that his action was timely under section 6501(c)(1), which allows the Commissioner to initiate the assessment and collection of taxes at any time after the filing of a fraudulent return. I.R.C. Sec. 6501(c)(1) (1976). Applying the reasoning of Dowell v. Commissioner, 614 F.2d 1263 (10th Cir.1980), and Klemp v. Commissioner, 77 T.C. 201 (1981), appeal docketed, No. 81-7744 (9th Cir. November 5, 1981), the courts below found for the taxpayers. These appeals followed.
 
 
 19
 Section 6501 lays out the basic time limitations on the assessment and collection of taxes by the Commissioner. Section 6501(a) provides in relevant part:
 
 
 20
 (a) General rule.--Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) ... and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.
 
 
 21
 I.R.C. Sec. 6501(a) (1976). Section 6501(c)(1) provides:
 
 
 22
 (1) False return.--In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.
 
 
 23
 I.R.C. Sec. 6501(c)(1) (1976). Interpreting these two provisions, the majority finds section 6501(c)(1) to be "clear on its face" and holds it to be a complete exception to section 6501(a), even when the taxpayer files a subsequent, non-fraudulent amended return.
 
 
 24
 While recognizing that "[t]he starting point in every case involving construction of a statute is the language itself," Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J. concurring), the Court has recently admonished that "ascertainment of the meaning apparent on the face of a single statute need not end the inquiry.... This is because the plain meaning rule is 'rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists.' " Watt v. Alaska, 451 U.S. 259, 266, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981), quoting Boston Sand Co. v. United States, 278 U.S. 41, 48, 49 S.Ct. 52, 53, 73 L.Ed. 170 (1928).[2] In this case sufficient persuasive evidence exists to lead me to a different conclusion than the majority about the proper interpretation of section 6501. Because amended returns are not an explicit part of the statutory scheme, because a reasonable alternative reading of the statutory scheme is apparent, and because the majority's holding leads to distorted results, I am unable to accept the majority's reading of the statute's "plain meaning."
 
 
 25
 First, although section 6501(c)(1) might be "clear on its face" concerning the Commissioner's statutory authority to act when a false or fraudulent return is first filed, it is not "clear" on the issue presented here, the effect of a subsequent filing of a non-fraudulent amended return. The majority itself acknowledges, majority op. at 300 n. 4, that Congress has not provided for amended returns under the statute and that the Commissioner's treatment of them is a matter solely within his discretion. Koch v. Alexander, 561 F.2d 1115, 1117 (4th Cir.1977); Miskovsky v. United States, 414 F.2d 954, 955-56 (3d Cir.1969); Lion Associates, Inc. v. United States, 515 F.Supp. 550 (E.D.Pa.1981).[3] They are a creation of the Internal Revenue Service and not of Congress. It is thus difficult to understand how their effect on the statute of limitations can be discerned solely from the language of the statute when Congress made no provision for amended returns within the statutory scheme.
 
 
 26
 Second, Dowell v. Commissioner, 614 F.2d 1263 (10th Cir.1980), offers a reasonable alternative interpretation of section 6501. Accord Britton v. United States, 532 F.Supp. 275 (D.Vt.1981), aff'd without opinion, 697 F.2d 288 (2d Cir.1982); Klemp v. Commissioner, 77 T.C. 201 (1981), appeal docketed, No. 81-7744 (9th Cir. November 5, 1981).[4] In Dowell, the court recognized that the fraudulent original return is not a "return" for the purposes of section 6501(a). The court cited Zellerbach Paper Co. v. Helvering, 293 U.S. 172, 55 S.Ct. 127, 79 L.Ed. 264 (1934), in which the Supreme Court held that the statute of limitations began to run against deficiency assessments upon the filing of a first return if the first return is proper. The Court stated that "[p]erfect accuracy or completeness is not necessary to rescue a return from nullity, if it purports to be a return, is sworn to as such..., and evinces an honest and genuine endeavor to satisfy the law." 293 U.S. at 180, 55 S.Ct. at 130. Applying this principle to the instant situation, the Dowell court reasoned that a fraudulent return is not an honest and genuine effort to satisfy the law and thus does not start the running of any statutory limitation period. Dowell, 614 F.2d at 1265-66; cf. Kaltreider Construction Co. v. United States, 303 F.2d 366, 368 (3d Cir.), cert. denied, 371 U.S. 877, 83 S.Ct. 148, 9 L.Ed.2d 114 (1962) (the first return must be complete and meet the statutory requirements; the statute of limitations will begin to run only upon the filing of a proper return) (dicta). Section 6501(c)(1) does apply whenever an inadequate return is filed, not as a statute of limitations, but rather as a provision allowing the government to institute a suit at any time.[5] When a valid return is filed, even in the form of an amended return to a previously filed fraudulent return, the limitation period of section 6501(a) begins to run.
 
 
 27
 Third, the Dowell court's statutory reading of section 6501 "balances the policy of repose to the taxpayer with the purpose of providing the Commissioner of Internal Revenue adequate time to assess taxes and deficiencies." Britton, 532 F.Supp. at 278. While a fraudulent return may put the Commissioner at a special disadvantage in detecting errors, the filing of an amended return removes the disadvantage by providing the Commissioner with all the information required by law. The general rule, therefore, should govern. Dowell, 614 F.2d at 1265.[6] That interpretation also avoids the distorted result reached by the majority. Under the majority's holding, once a fraudulent return is filed, the threat of future assessment of deficiencies will hang in perpetuity like the Sword of Damocles over the head of the taxpayer, despite his efforts to set the record straight.[7]
 
 
 28
 In reaching my conclusion, I do not purport to set tax policy, rather merely to interpret the tax code in light of congressional purpose. See Rose v. Lundy, 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982) (when Congress never thought of the problem, courts must examine a statute's underlying purposes to determine its proper scope); Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979) ("As in all cases of statutory construction, our task is to interpret the words of these statutes in light of the purposes Congress sought to serve."). My interpretation of section 6501 reflects the factual reality that the Commissioner has made amended returns an integral part of the administrative scheme,[8] even though Congress did not make it an explicit part of the statutory scheme. The differing conclusions reached by the majority and the tenth circuit indicate that Congress' intent under this provision is far from clear and that perhaps section 6501 is a proper area for further legislative scrutiny. I am unable nonetheless to join the majority's holding that section 6501, as presently written, does not provide for the application of a three year statute of limitations in this case.
 
 
 
 [1]
 These cases were not consolidated. They were, however, argued together and contain no relevant differences of fact. We will, therefore, discuss them in a single opinion
 
 
 [2]
 26 U.S.C. Sec. 6501 provides in relevant part:
 (a) Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.
 * * *
 (c) Exceptions.
 (1) False return. In the case of a false return or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.
 
 
 [3]
 Deleet Merchandising Corporation denies any fraud on its part in the preparation of its income tax returns. The district court, however, assumed that the original returns were fraudulent for the purposes of the summary judgment motion, and we must make the same assumption in deciding the appeal from that decision
 
 
 [4]
 Zellerbach Paper presented essentially the opposite of the problem posed by this case. A taxpayer filed a non-fraudulent return. Subsequent to the filing of that return, Congress passed the Revenue Act of 1921 which applied retroactively and had a de minimis effect on the tax liability of the company. After the limitations period had run, the government attempted to assess large deficiencies, on grounds unrelated to the 1921 Act, on the theory that the failure to file an amended return rendered the original return a nullity and tolled the statute of limitations. The Supreme Court rejected the argument, noting that where a return purported to be a return and evinced an honest and genuine endeavor to satisfy the law it would not be treated as a nullity because of inaccuracies or omissions. "Supplement and correction in such circumstances will not take from a taxpayer, free from personal fault, the protection of a term of limitation already running for his benefit." Zellerbach Paper Co. v. Helvering, 293 U.S. 172, 180, 55 S.Ct. 127, 130, 79 L.Ed. 264 (1934) (emphasis added). Nothing in the opinion suggests that a culpable taxpayer, who files a fraudulent return with the intent to evade tax, renders the original fraudulent return a nullity for the purpose of the statute of limitations, by filing an amended return
 
 
 [5]
 We note that the treatment of amended returns is a matter of internal administration, and solely within the discretion of the Commissioner. Miskovsky v. U.S., 414 F.2d 954, 955 (3d Cir.1969). Neither the Internal Revenue Code nor the Treasury Regulations make any provision for the acceptance of an amended return in place of the original return previously filed. Koch v. Alexander, 561 F.2d 1115, 1117 (4th Cir.1977); Kearney v. A'Hearn, 210 F.Supp. 10, 16-17 (S.D.N.Y.1962), aff'd per curiam, 309 F.2d 487 (2d Cir.1962). See also Kaltreider Constr., Inc. v. United States, 303 F.2d 366, 368 (3d Cir.1962), cert. denied, 371 U.S. 877, 83 S.Ct. 148, 9 L.Ed.2d 114 (1962) (three year period of limitation for filing refund claim is not altered by the filing of an amended return)
 
 
 [6]
 The court in Dowell declared that section 6501(c)(1) and section 6501(c)(3) are in pari materia and should, therefore, be construed consistently with one another. We agree with that statement but reach a different conclusion, because we believe that Congress provided a clear indication in section 6501(a) that it did intend "statute of limitations treatment to differ between taxpayers who filed fraudulent returns, and those who fraudulently failed to file." Dowell v. Commissioner, 614 F.2d at 1266
 
 
 [7]
 The appellees have pointed to no cases in which the Commissioner has used his power under section 6501(c)(1) to prosecute fraud "at any time" in an abusive way. As the government notes in its brief, there are no real incentives for it to delay bringing civil assessment actions and very powerful incentives for it to act as quickly as possible. Delays serve only to make it more difficult for the I.R.S. to carry its burden of proof in fraud cases. The Commissioner, recognizing the problems inherent in delay, specifically requires agents to keep investigations involving possible fraud as "current" as any other type of case, even though the agents theoretically are faced with no limits on when such actions could be brought. II Audit, CCH Internal Revenue Manual, Sec. 4565.51(3)
 
 
 [8]
 26 U.S.C. Sec. 6501(e)(1)(A) states:
 Substantial omission of items. Except as otherwise provided in subsection (c)--
 (1) Income taxes. In the case of any tax imposed by subtitle A--
 (A) General rule. If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed.
 
 
 [1]
 In Badaracco the taxpayer filed a petition with the tax court for a redetermination of the deficiency under I.R.C. Sec. 6213(a) (1976 & Supp. IV 1980). In Deleet the taxpayer paid the tax and then sought a refund in the District Court for the District of New Jersey pursuant to I.R.C. Sec. 7422 (1976 & Supp. IV 1980) and 28 U.S.C. Sec. 1346(a)(1) (1976)
 
 
 [2]
 Of course it is true that the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing: be it a statute, a contract, or anything else. But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning
 Cabell v. Markham, 148 F.2d 737, 739 (2d Cir.) (L. Hand, J.), aff'd, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945).
 
 
 [3]
 Taxpayers point to one provision which mentions "amendments" to returns. I.R.C. Sec. 6213(g)(1) (1976 & Supp. IV 1980) defines "return" for the purposes of Sec. 6213 as "any return, statement, schedule, or list, and any amendment or supplement thereto...." The legislative history indicates that this definition was included to insure that the Commissioner reviewed all supporting schedules for "mathematical errors" before assessing deficiencies through summary proceedings. See H.R.Rep. No. 94-658, 94th Cong., 1st Sess. 289-93 (1975); S.Rep. No. 94-938, 94th Cong., 2d Sess. 375-78 (1976), U.S.Code Cong. & Admin.News 1976, p. 2897. It does not indicate that Congress explicitly included amended returns within the statutory scheme
 
 
 [4]
 See Espinoza v. Commissioner, 78 T.C. 412 (1982); Kramer v. Commissioner, 44 T.C.M. (CCH) 42 (1982); Elliott Liroff v. Commissioner, 44 T.C.M. (CCH) 43 (1982); Deyel v. Commissioner, 44 T.C.M. (CCH) 45 (1982); Richard B. Liroff v. Commissioner, 44 T.C.M. (CCH) 47 (1982); Nesmith v. Commissioner, 42 T.C.M. (CCH) 1269 (1981), appeal docketed, No. 82-4162 (5th Cir. April 29, 1982) (all following Klemp)
 
 
 [5]
 As the Tenth Circuit recognized in Dowell, Sec. 6501(c) "represents the antithesis of a limitation period." 614 F.2d at 1265-66
 
 
 [6]
 That reading is also consistent with the language of Sec. 6501(a) that tax must be assessed within three years after a return is filed "whether or not such return was filed on or after the date prescribed." I.R.C. Sec. 6501(a). When no return is filed, the Commissioner is able to act "at any time" under I.R.C. Sec. 6501(c)(3). If a return is later filed, however, the Commissioner then has all the necessary information to assess what tax is due, and the general three year period applies. Dowell, 614 F.2d at 1265; Bennett v. Commissioner, 30 T.C. 114, 124 (1958)
 
 
 [7]
 The application of the three year statute of limitations will not allow a taxpayer who previously filed a fraudulent return to "escape [the] penalties or erase the fraud merely by filing a non-fraudulent amended return." Majority op. at 302. The taxpayer is still subject to civil and criminal sanctions as long as the Commissioner acts within three years
 
 
 [8]
 The Commissioner's regulations provide for the use of amended returns by the Internal Revenue Service. See, e.g., 26 C.F.R. Secs. 301.6211-1(a), .6402-3(a)(5) (1982). When the I.R.S. has accepted amended returns, as in this case, the courts have given them effect. E.g., United States v. Samara, 643 F.2d 701, 704 (10th Cir.), cert. denied, 454 U.S. 829, 102 S.Ct. 122, 70 L.Ed.2d 104 (1981); Bookwalter v. Mayer, 345 F.2d 476, 480 (8th Cir.1965)