T.C. Memo. 2010-32

UNITED STATES TAX COURT

LYLE E. HOTCHKISS, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23421-04L.          Filed February 23, 2010.

<u>Paul R. Tom</u>, for petitioner.

<u>William F. Castor</u>, for respondent.


MEMORANDUM OPINION

KROUPA, <u>Judge</u>:  This collection review matter is before the
Court in response to a Notice of Determination Concerning
Collection Action(s) Under Section 6320 and/or 6330[1]
(determination notice).  The sole issue for decision is whether

_____

[1]All section references are to the Internal Revenue Code,
and all Rule references are to the Tax Court Rules of Practice
and Procedure, unless otherwise indicated.

the Appeals officer engaged in a prohibited ex parte communication.  We conclude that he did not.

## Background

This case was submitted fully stipulated under Rule 122. The stipulation of facts and the accompanying exhibits are incorporated by this reference.  Petitioner is a dentist who resided in Florida at the time he filed the petition.

Petitioner failed to file income tax returns for 1993, 1994, 1995, and 1996, and respondent issued petitioner deficiency notices.  Respondent assessed the deficiencies in tax after petitioner failed to file a petition contesting the tax liabilities.  Petitioner filed returns for 1997, 1998, and 1999, but he failed to pay all of the reported tax due.  Respondent examined the returns and proposed additional tax.  Petitioner consented to assessment of the additional tax.

Respondent sent petitioner a Letter 1058, Final Notice-- Notice of Intent to Levy and Notice of Your Right to a Hearing, and a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing, regarding the unpaid liabilities for taxable years 1993 through 1996 in early October 2003.  Petitioner timely submitted a written request for a collection due process (CDP) hearing.  In addition, respondent sent petitioner a levy notice for the 1997 through 1999 taxable years, and again petitioner timely requested a CDP hearing.

Respondent granted petitioner's requests for a CDP hearing to address petitioner's $2.5 million outstanding tax liability for taxable years 1993 through 1999 (years at issue). Petitioner submitted a Form 656, Offer in Compromise, during the course of the CDP hearing. Petitioner offered to pay $175,000 as a collection alternative to lien and levy action for the years at issue and to settle any deficiency for 2000 and 2001. In support of his offer-in-compromise (OIC), petitioner submitted a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, for himself, and a Form 433-B, Collection Information Statement for Businesses, for his dentistry practice, Island Dental. Petitioner did not challenge the existence or amount of the underlying tax liability.

The Internal Revenue Service (IRS) assigned Appeals Officer Frank Andreacchi (AO Andreacchi) to handle petitioner's collection review matters for the years at issue. AO Andreacchi forwarded the OIC and petitioner's supporting information to an offer specialist for recommendation. The offer specialist examined petitioner's Forms 433-A and 433-B and their attachments (financial documents) and calculated a reasonable collection potential (RCP) of $591,275[2] with a future income component of $315,936.

AO Andreacchi separately reviewed the administrative file in petitioner's case and learned that petitioner had been convicted for failure to file under section 7203 for 1993 and for three

_____

[2]All amounts are rounded to the nearest dollar.

counts of income tax evasion under section 7201 for 1994 through 1996. The administrative file also included records concerning a nominee lien filed in petitioner's case. The nominee lien involved real property owned by petitioner's ex-wife in Sanibel, Florida (Sanibel property). The administrative file included detailed information concerning petitioner's continued control over the Sanibel property, which he transferred to his ex-wife for $1 shortly before their divorce. AO Andreacchi separately calculated an increased RCP of $1,094,095 after reviewing this information. The increase of $502,820 reflected the Sanibel property's value.

AO Andreacchi faxed these computations to petitioner's counsel on October 27, 2004, and requested a response by November 1, 2004. AO Andreacchi received a phone call from petitioner's counsel within a few hours after the fax was sent. AO Andreacchi explained that the OIC was significantly below the RCP as determined by the offer specialist. He further explained that even if petitioner increased the offer to nearly $591,275, he would require an independent offer examination because the offer specialist examined only the data provided by petitioner which did not include the Sanibel property's value. AO Andreacchi again requested that petitioner's counsel contact him by November 1, 2004, if petitioner intended to increase the OIC. Petitioner's counsel failed to submit an increased OIC or to provide any new or updated information.

AO Andreacchi received a voice mail message from Special Agent Miguel Rivera of the IRS Criminal Investigation Division on November 1, 2004. He returned Special Agent Rivera's call later that day. The parties stipulated that Special Agent Rivera asked AO Andreacchi to provide copies of petitioner's financial documents filed with the OIC. The parties further stipulated that AO Andreacchi asked if he could continue to contact petitioner or petitioner's counsel, and Special Agent Rivera informed him that petitioner was not the "subject" of a criminal investigation at that time. AO Andreacchi then faxed petitioner's financial documents to Special Agent Rivera.

AO Andreacchi did not accept petitioner's $175,000 OIC because it was significantly less than petitioner's RCP of $1,094,095. Accordingly, he sustained the proposed collection action to satisfy petitioner's unpaid tax liabilities for the seven years at issue in the determination notice issued November 5, 2004. Petitioner timely filed a petition to contest the determination notice.

## Discussion

We now decide whether we should uphold the determination notice. Petitioner contends that the phone conversation between AO Andreacchi and Special Agent Rivera constituted a prohibited ex parte communication. We first discuss the CDP hearings generally and then turn to rules concerning ex parte communications.

The Commissioner may collect a tax by levy upon the property of the taxpayer liable therefor if the taxpayer neglects or refuses to pay the tax liability within 10 days after notice and demand for payment. Sec. 6331(a). The Commissioner generally must provide the taxpayer written notice of the right to a hearing before the levy is made. Sec. 6330(a). Upon a timely request, the taxpayer is entitled to an administrative hearing before an impartial officer or employee of the Appeals Office. Sec. 6330(b). Following the hearing, the Appeals officer must determine whether the collection action is to proceed, taking into account the verification the Appeals officer has made, the issues raised by the taxpayer at the hearing, and whether the collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary. Sec. 6330(c)(3).

We have jurisdiction to review the determination if we have jurisdiction over the type of tax involved in the case. Sec. 6330(d)(1); Iannone v. Commissioner, 122 T.C. 287, 290 (2004). We review under an abuse of discretion standard when the underlying tax liability is not in issue.[3] Goza v. Commissioner, 114 T.C. 176, 182 (2000). Under the abuse of discretion standard, petitioner is required to show that respondent's

_____

[3]Petitioner did not contest the existence or amount of his underlying tax liabilities at the CDP hearing, so we need not consider that issue. See Giamelli v. Commissioner, 129 T.C. 107 (2007).

actions were arbitrary, capricious, or without sound basis in fact.  See <u>Woodral v. Commissioner</u>, 112 T.C. 19, 23 (1999). Respondent's determination to proceed with collection was based on petitioner's failure to increase his OIC, which was significantly lower than petitioner's RCP.  Petitioner contested the reasonableness of the RCP in his petition but has since abandoned the argument.[4]  Instead, petitioner argues only that the conversation between AO Andreacchi and Special Agent Rivera was a prohibited ex parte communication requiring that petitioner's case be remanded to Appeals for a new hearing.  We have held the Commissioner abused his discretion when Appeals' independence was compromised by prohibited ex parte communications.  <u>Drake v. Commissioner</u>, 125 T.C. 201, 210 (2005); <u>Moore v. Commissioner</u>, T.C. Memo. 2006-171.  Accordingly, we focus on whether any prohibited ex parte communication occurred that compromised AO Andreacchi's independence.

Congress mandated that the IRS prohibit ex parte communications between Appeals officers and other IRS employees to the extent that such communications appear to compromise the independence of the Appeals officers.  Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 1001(a)(4), 112 Stat. 689.  The Commissioner has issued guidance to fulfill that congressional mandate and ensure an independent

---

[4]Petitioner's opening and reply briefs failed to address the reasonableness of the RCP.  Accordingly, arguments concerning the RCP have been abandoned.  See, e.g., <u>Nicklaus v. Commissioner</u>, 117 T.C. 117, 120 n.4 (2001).

Appeals Office.  See Rev. Proc. 2000-43, 2000-2 C.B. 404.  This guidance defines ex parte communications as communications between IRS Appeals and another IRS function without the participation of the taxpayer or the taxpayer's representative.  See Rev. Proc. 2000-43, sec. 3, Q&A-1, 2000-2 C.B. at 405.  Not all ex parte communications are prohibited, however.  Ex parte communications are allowed when the communications involve matters that are ministerial, administrative, or procedural in nature and do not address the substance of the issues or positions taken in the case.  Id., Q&A-5 and -6, 2002-2 C.B. at 405-406.

Petitioner argues that the conversation between AO Andreacchi and Special Agent Rivera was a prohibited ex parte communication.  He further argues that all semblance of impartiality in the Appeals process disappeared when AO Andreacchi spoke to Special Agent Rivera and became, in effect, a criminal investigator allied with the IRS Criminal Investigation Division.  He cites several cases where we have remanded matters to Appeals after improper ex parte communications concerning the merits of the case or the character of the taxpayer.  See Drake v. Commissioner, supra; Indus. Investors v. Commissioner, T.C. Memo. 2007-93; Moore v. Commissioner, supra.  All these cases are distinguishable.  Moreover, even petitioner fails to suggest that the communications between AO Andreacchi and Special Agent Rivera were similar in nature to the communications in those cases.  Instead, he suggests that any communications between a "gun-

carrying" special agent and an Appeals officer would automatically negate impartiality.

The communications in the cases petitioner cites are materially different from the communications at issue. AO Andreacchi and Special Agent Rivera did not discuss the substance of the issues or positions taken in the CDP case or their perceptions of the demeanor or credibility of petitioner or petitioner's representative. Rather, AO Andreacchi carefully restricted his communication with Special Agent Rivera to mere administrative, ministerial, or procedural matters. Special Agent Rivera requested petitioner's financial documents, and AO Andreacchi agreed to fax the documents. The mere request for information received from the taxpayer is an administrative, ministerial, or procedural matter. See Rev. Proc. 2000-43, sec. 3, Q&A-5.

In addition, AO Andreacchi asked if he could continue communicating with petitioner or petitioner's counsel. The dialogue concerning the status of the criminal investigation was relevant to whether AO Andreacchi could proceed with petitioner's CDP case in accordance with respondent's procedures for coordinating and handling parallel civil and criminal cases. It has long been the policy of the IRS to defer civil assessment and collection until the completion of criminal proceedings. Taylor v. Commissioner, 113 T.C. 206, 212 (1999) (citing Badaracco v. Commissioner, 693 F.2d 298, 302 (3d Cir. 1982), revg. T.C. Memo. 1981-404 and Deleet Merch. Corp. v. United States, 535 F. Supp.

402 (D.N.J. 1981), affd. 464 U.S. 386 (1984)), affd. 9 Fed. Appx. 700 (9th Cir. 2001); see Lee v. Commissioner, 113 T.C. 145, 151 n.5 (1999). AO Andreacchi was only complying with this policy when he asked if he could continue speaking to petitioner or petitioner's counsel. Congress did not "[mandate] a major redesign of the fundamental processes Appeals has traditionally followed" when it directed the IRS to address ex parte communications. Rev. Proc. 2000-43, sec. 2, 2000-2 C.B. at 404. Accordingly, we find the ex parte communication in which AO Andreacchi learned from Special Agent Rivera that petitioner was not then under criminal investigation to be an administrative, ministerial, or procedural matter.

Petitioner argues, however, that any call from a special agent of the IRS Criminal Investigation Division would alert an Appeals officer that the taxpayer in question might be a criminal and would "appear to compromise" the independence of Appeals. See Rev. Proc. 2000-43, sec. 3, Q&A-1. Petitioner provides no support for creating such a sweeping general rule, and we find no indication that IRS Criminal Investigation Division employees are to be treated differently from other IRS employees.

In addition, we find petitioner's argument unpersuasive given the facts. AO Andreacchi's independence was not compromised, nor did it give the appearance of having been compromised, by his communication with Special Agent Rivera. AO Andreacchi had already informed petitioner's counsel that he was rejecting the OIC because it was significantly below the RCP

calculated by the offer specialist.  He had also alerted petitioner's counsel that the value of the Sanibel property should be included in the RCP and an independent offer investigation would be necessary if petitioner increased his OIC. Petitioner did not increase the OIC or further communicate with AO Andreacchi before the deadline.  Accordingly, AO Andreacchi issued the determination notice to petitioner on November 5, 2004, rejecting petitioner's OIC and sustaining the proposed collection activity.  We fail to see how AO Andreacchi's independence was compromised or appeared to be compromised by his communication with Special Agent Rivera.

Further, AO Andreacchi was aware of petitioner's criminal convictions for several of the years at issue before speaking with Special Agent Rivera.  He was also aware of the questions in connection with the nominee lien on the Sanibel property, and he included the value of the Sanibel property in the RCP.  In addition, AO Andreacchi and Special Agent Rivera did not discuss the purpose of Special Agent Rivera's request.  We again fail to see how AO Andreacchi's independence was or appeared to be compromised.

We have reviewed the entire record and find that the communication between AO Andreacchi and Special Agent Rivera did not constitute an impermissible ex parte communication because it was ministerial, administrative, or procedural in nature and did not compromise, nor give the appearance of compromising, AO Andreacchi's independence.  Accordingly, we sustain the

determinations in the determination notice that collection may proceed.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.