**EVANS COOPERAGE CO., INC.,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

No. 82–3608.

United States Court of Appeals,
Fifth Circuit.

Aug. 18, 1983.

**5.** *See, e.g., Rechtzigel,* 703 F.2d at 1063–64; *McCoy,* 696 F.2d at 1236; *Edwards,* 680 F.2d at 1270; *Eisele,* 580 F.2d at 805.

* Former Fifth Circuit case, Section 9(1) of Public Law 96-452—October 14, 1980.

Waldman & Guarisco, Paul H. Waldman, New Orleans, La., for plaintiff-appellant.

Michael L. Paup, Chief, Appellate Section, Tax Division, Dept. of Justice, Glenn L. Archer, Jr., Asst. Atty. Gen., Gary R. Allen, John P. Griffin, Attys., Washington, D.C., for defendant-appellee.

Before WISDOM, TATE and GARWOOD, Circuit Judges.

TATE, Circuit Judge:

The taxpayer corporation ("Evans") claims that it was erroneously required to pay an additional tax (sometimes referred to as a penalty) because of its alleged underpayment of the estimated income tax required to be paid during the 1977 taxable

year. 26 U.S.C. §§ 6154, 6655. Its claim for refund being denied, Evans sues to recover the penalty as erroneously assessed and collected. 28 U.S.C. § 1346(a)(1). The district court granted the United States summary judgment and dismissed Evans' suit.[1]

Evans appeals. It contends that no underpayment had occurred, based on its subsequently amended return for the preceding 1976 year, reflecting a lesser tax liability (and therefore lesser amount due of 1977 estimated tax) than initially reported; and, alternatively, that the amount of the penalty should be calculated in a lesser amount on the basis of a subsequently amended 1977 return reflecting its *actual* tax liability for 1977 in a lesser amount than initially reported. We affirm the dismissal of Evans' claim for refund, agreeing with the district court that the statutory language unambiguously permits calculations of the underpayment of an estimated tax "safe harbor" minimum, as well as of the amount of the underpayment, only on the basis of the corporation's timely filed "return[s] for the taxable year[s]".

*Context Facts*

When it filed its income tax return for its 1976 taxable year, the Evans corporation also filed its estimated tax computation for the 1977 year. In preparing the estimated tax for the 1977 tax year, Evans' accountant intended that the quarterly payments of estimated tax equal the amount required for a "safe harbor" minimum amount that was based on the tax shown on the corporation's 1976 tax return, § 6655(c)(1) (see below), but through inadvertence he miscalculated the quarterly payments due, so that the amount of estimated 1977 tax paid by Evans was $2,932 less than the minimum amount so due.

Evans timely filed its 1977 income tax return, reflecting a tax liability of $833,971. In early 1978, the Internal Revenue Service notified Evans of the underpayment of esti-mated 1977 tax. Without the application of the safe harbor exception, Evans had underpaid its 1977 estimated taxes by $587,-000.[2] Accordingly, it assessed a penalty for such underpayment in the amount of $24,-405, which Evans paid in November 1978. On May 18, 1979, Evans filed amended returns for 1976 and 1977, reflecting lower tax liability for the 1976 and 1977 tax years based on a readjustment of inventory values, a position with which the Internal Revenue Service essentially agreed in redetermining the income taxes actually due for the tax years in question.

In June 1980, Evans filed timely a claim with the Internal Revenue Service for refund of the penalties previously paid, based upon its non-liability or lessened liability therefor if based upon the *actual* (lesser) 1976 and 1977 tax liability resulting from the redetermination by the Service in 1979–80. The Commissioner disallowed this refund claim, and the taxpayer instituted the present suit to obtain it.

*The Issues and Their Statutory Context*

The issues before us involve the additional tax (sometimes referred to as a penalty) imposed by the Internal Revenue Code of 1954, 26 U.S.C. §§ 1 et seq., upon a corporation that underpays the "estimated tax" for a tax year, as required by 26 U.S.C. § 6154, during the year preceding the timely filing of its income tax return.

Under the facts before us, particularly at issue are provisions of § 6655 of the Code, 26 U.S.C. § 6655, which are set forth in full in an appendix to this opinion. Therein, a "safe harbor" provision protects a corporation against any liability for this additional tax or penalty if the estimated tax paid during the year was at least equal to the amount of "[t]he tax shown on *the return of the corporation for the preceding taxable year.*" § 6655(d)(1) (emphasis added). With regard to determining the underpayment of estimated taxes for a given tax

1. The district court's opinion is unofficially reported at *Evans-Cooperage, Inc. v. United States,* 50 A.F.T.R.2d 5882 (E.D.La.1982).

2. This calculation is based upon 80% of the amount shown on the tax return for the 1977 year, less the actual estimated taxes paid. § 6655(b).

year (on the basis of which the additional tax or penalty is determined), the Code provides that "the amount of the underpayment shall be the excess of . . . [an estimated tax] equal to 80 percent of the tax shown *on the return for the taxable year.*" § 6655(b)(1) (emphasis added).

The issues before us involve the statutory meaning of the italicized language. The government contends that the "return" "for the taxable year" upon which both statutory provisions revolve refers to the timely filed return at the close of the tax year. The taxpayer contends that, in computing an *estimated* tax due for a given year and in assessing a penalty for underpayment of the estimated tax, the "return[s]" for the year upon which these are calculated should refer to the *actual* tax liability reflected by any amended or final substitute return, where the initially timely filed return has been found to be erroneous.

The contentions of the parties may perhaps be more readily understood if stated in the light of the concrete facts before us. First, in tabular form, we list below Evans' federal income tax liability for its 1976 and 1977 taxable years as determined by (1) its initial returns for the years in question, (2) its amended returns filed in 1979, and (3) as finally redetermined by the Internal Revenue Service, reflecting the lesser amounts ultimately found to be due for the taxable years in question:

## TAX LIABILITY DETERMINED BY

| Taxable Year Ended | 1. Timely Filed Return (Filed 1977 and 1978, After Close of Respective Tax Years) | 2. Amended Return (Filed 5–18–79) | 3. Internal Revenue Service Redetermination (in 1979–80) |
|---|---|---|---|
| (a) March 31, 1976 | (a) $ 84,633 | (a) $ 71,277 | (a) $ 65,744 |
| (b) March 31, 1977 | (b) 833,971 | (b) 594,367 | (b) 599,898 |

*As to the safe-harbor minimum estimated tax due for the 1977 tax year:* The *government* contends that § 6655(d)(1) provides that it should be $84,633 (figure 1(a) above), "[t]he tax shown on the return of the corporation for the preceding [i.e., 1976] taxable year". If so, the taxpayer Evans underpaid its 1977 estimated taxes by $2,932, and is liable for $24,405 additional (penalty) tax. The *taxpayer* contends that the 1977 estimated tax due should instead be based upon $71,279 (figure 2(a) above), the tax shown on its amended return for 1976 (although the amended return was not filed until 1979), as being the final return for 1976. If so, Evans had paid on its 1977 estimated tax some eight thousand dollars in excess of this amount; and thus, under the safe harbor provision, is not subject to additional (penalty) tax for its $587,000 underpayment of its estimated taxes for the 1977 tax year.

*If there is an underpayment, upon what tax return figure should the penalty be calculated:* The *government* contends that § 6655(b)(1) provides the penalty for underpayment of the 1977 estimated taxes should be based upon $833,971 (figure 1(b) above), "the tax shown on the return for the [1977] taxable year." If so, the taxpayer is liable for additional (penalty) tax in the amount assessed of $24,405. The *taxpayer* contends that, even if underpayment is found, the penalty for the underpayment of 1977 estimated tax should not be calculated on the inflated figure of $833,971 (figure 1(b) above), the amount initially reported, but instead should be based either on the lesser figure of the amended return or on the government's final redetermination of taxes actually due for 1977, figures 2(b) and 3(b) above. The taxpayer thus contends that it is only logical and equitable to calcu-

late a penalty for underpayment of 1977 estimated tax on the basis of the 1977 tax actually due on the return, see figure 3(b) above; in which circumstance, the taxpayer would be liable for a penalty at most of $16,932, not $24,405 assessed.

## I.

### § 6655(d)(1)—the "Safe Harbor" Provision

Evans argues that the "tax shown on the return" language of § 6655 does not in terms refer to the "original" return. Based on excerpts from the legislative reports, the taxpayer contends that both safe harbor and penalty provisions should be construed to refer to the ultimate or final tax liability for the years in question, not to any tax liability on the initial return ultimately held to be erroneous.[3]

■ With regard to § 6655(d)(1), the safe harbor provisions, the statute unambiguously provides that, to take advantage of its protection, the payment of estimated tax installments during a taxable year shall be at least equal to "[t]he tax shown on the *return* of the corporation for the preceding

year." (Emphasis added.) The taxpayer's argument that the ultimate tax liability, rather than the amount reflected on the return, should trigger (or remove) the protection of the safe harbor provision is in the face of express statutory language to the contrary. In context, the legislative report excerpts relied upon by the taxpayer (see note 3 *supra*) were merely drawing a distinction between the tax liability as estimated for the purpose of the interim filings required by estimated tax provisions and the liability as ultimately disclosed on the return for the full taxable year.

Moreover, the interpretation proposed by the taxpayer would flout the legislative purposes of affording the taxpayer a predictable and easily determined method to avoid penalty for underpayment of estimated taxes required during a tax year. The legislative purpose of the estimated tax provisions is to accelerate the collection of income taxes and to alleviate the pressures associated with extensive short-term Government borrowing. See S.Rep. No. 1622, 83d Cong., 2d Sess. at 137–140 ([1954] 3 U.S.Code Cong. & Ad.News 4621, 4771,

---

**3.** The Senate finance committee's general report concerning § 6655 reads:

[T]he charge will not be imposed if the estimated tax upon the basis of which the installments are paid falls into any of the following categories:

(1) If it amounts to 70 percent of the tax (in excess of $50,000) shown on the final tax return;

(2) If it amounts to as much as the previous year's tax....

S.Rep. No. 1622, 83d Cong., 2d Sess., *reprinted in* 1954 U.S.Code Cong. & Ad.News 4025, 4773.

In its detailed discussion of proposed tax code provisions, the Senate committee, using the language of the proposed House bill, reported:

[N]o charge under this section shall be applied with respect to any installment where the corporation establishes that the total amount of tax paid on or before the last date prescribed for the payment of such installment is not less than an amount based on—

(a) The previous year's tax; or

(b) A tax based on the previous year's income, computed at current rates....

S.Rep. No. 1622, *supra,* U.S.Code Cong. & Ad. News 5243.

To support its contention that the "tax shown on the return" language of the exception

refers to the taxpayer's ultimate tax liability as finally assessed by the Service, the taxpayer here also points to the House's example of computation of the § 6654 penalty on underpayment of estimated taxes by individuals (expressly deemed to apply to the estimated tax payments of corporations under § 6655, *see* U.S.Code Cong. & Ad.News 4545) as employing the year's *final* tax liability. This example provides:

[Assume that] a taxpayer ... showing a tax liability of $40,000 on his final return has paid a total of $20,000 in equal installments of $5,000 during the year through withholding and declarations. [T]he charge ... applicable for each quarter ... would be computed as follows:

| | | |
|---|---|---|
| (1) *Tax liability* | | $40,000 |
| (2) 70 percent of *tax liability* | | 28,000 |
| (3) ¼ of 70 percent | | 7,000 |
| (4) Deduct quarterly prepayment | | 5,000 |
| (5) Basis for computation of charge (line 3 minus line 4) | | 2,000 |

H.Rep. No. 1655, 83d Cong., 2d Sess., *reprinted in* 1954 U.S.Code Cong. & Ad.News 4544 (emphasis added).

4774). The safe harbor provisions in § 6655 reflect Congress's concern that taxpayers may find it difficult to estimate precisely what their income for the year will be. See, S.Rep. No. 1662, *supra* at 139 ( [1954] 3 U.S.Code Cong. & Ad.News, *supra* at 4773). Thus, the definition of the term "underpayment" under Section 6655(b) itself provided, during the period here in question, for a 20 percent margin of error in estimating the tax that will ultimately be shown due on the return for the year in question. In addition, Section 6655(d)(1), the safe harbor provision, permits taxpayers to avoid any possibility of incurring a penalty for underestimating the income for the year by basing estimate tax payments simply on the amount shown due on the prior year's return.

This objective of the safe harbor provision—to provide a predictable escape from any possible penalty liability—would be defeated if penalties for underpayment of estimated taxes during the year were based, not on the easily determinable amount reflected on the preceding year's return, but instead upon the ultimate tax liability, possibly determined by adverse tax audit, a year or so after the tax year for during which the estimated tax installments were paid. Nor does the statutory language nor any legislative history or purpose permit an interpretation, urged by the taxpayer, that no penalty would be assessable if estimated taxes paid during the tax year were equal to *either* the figure on the previous year's return *or* the actual tax liability for the preceding year as ultimately determined, whichever is lesser.

 Insofar as the taxpayer Evans argues that its amended 1976 return (filed some years after the date for timely filing of the 1976 return) should be regarded as "the" return for the year,

the treatment of amended returns is a matter of internal administration, and solely within the discretion of the Commissioner. *Miskovsky v. U.S.,* 414 F.2d 954, 955 (3d Cir.1969). Neither the Internal Revenue Code nor the Treasury Regulations make any provision for the acceptance of an amended return in place of the original return previously filed. *Koch v. Alexander,* 561 F.2d 1115, 1117 (4th Cir.1977); *Kearney v. A'Hearn,* 210 F.Supp. 10, 16–17 (S.D.N.Y.1962), *aff'd per curiam,* 309 F.2d 487 (2d Cir.1962). *See also Kaltreider Constr., Inc. v. United States,* 303 F.2d 366, 368 (3d Cir.1962), *cert. denied,* 371 U.S. 877, 83 S.Ct. 148, 9 L.Ed.2d 114 (1962) (three year period of limitation for filing refund claim is not altered by the filing of an amended return).

*Badaracco v. Commissioner,* 693 F.2d 298, 301 n. 5 (3d Cir.1982). There, with regard to assessment of deficiencies for nonpayment of income taxes for past years, it was argued that, for purposes of time-bar, the amended nonfraudulent returns filed long after timely-filed fraudulent returns (as to which no time-bar applied) should be accepted as if the final substitute return. We expressly followed the *Badaracco* reasoning and result in *Nesmith v. Commission,* 699 F.2d 712 (5th Cir.1983), and there expressly rejected the rationale and holding of *Dowell v. Commissioner,* 614 F.2d 1263 (10th Cir. 1980), upon which Evans relied, which had held that an amended return could be considered as a "return" at least for those time-bar provisions.

 Thus, the Congressional intent in using the term "[t]he tax shown on the *return* of the corporation for the preceding year" as the safe-harbor minimum estimated tax figure payable, § 6655(d)(1) (emphasis added), seems quite plainly to refer to the timely filed return for the year in question, not to any amended return (unknown to the Code provisions) to be filed at some subsequent date. Further, the legislative purpose of affording the taxpayer predictability for application of the safe harbor provision would be defeated, if penalties on the succeeding year's estimated tax might be imposed, despite its being paid upon the preceding year's return, solely because of an amended return subsequently showing

greater liability.[4]

Accordingly, we affirm with little difficulty the district court's holding that the safe harbor minimum estimated tax payment required by § 6655(d)(1)—an amount at least equal to the "[t]he tax shown on the return of the corporation for the preceding year"—refers to the timely-filed return for that year.

### § 6655(b)(1)—the Penalty Provision

[6] For similar reasons of statutory construction, we likewise find that the computation of the underpayment of estimated tax for purposes of the penalty—to be based upon "the tax shown on the return for the taxable year", § 6655(b)(1)—legislatively refers to the timely filed tax for the year, not to any later amended return or redetermination that shows the taxes actually due for the year to be greater or less.

While the legislative purposes of affording predictability to the taxpayer and finality to the government (noted with regard to the safe harbor provision) are not as obviously served by this construction of § 6655(b)(1), we find no warrant to afford by judicial construction to the term "return" a different meaning in this statutory section than elsewhere in the same section and in the Code as a whole. It may be inequitable, as the taxpayer argues, to assess a penalty for underpayment of estimated tax, that is based upon the originally mistaken figure of income for the year, rather than upon the actual income for the year as ultimately determined. However, Congress unambiguously has provided otherwise [5], and the provision, if indeed inequitable, is for Congress to amend, not the courts.

**4.** As a matter of administration discretion, see *Badaracco, supra,* 693 F.2d at 301 n. 5, the Commissioner has ruled that an amended return filed on or before the last date for filing for the return of the year in question will be treated as "the return" for the purposes of the provisions at issue. Rev.Rule 78–256, 1978, 1 Cum.Bull. 438. The Commissioner's exercise of his discretion to treat timely-filed amended returns as part of the "return" for the year in question affords no basis for a judicial holding that amended returns, filed *after* the date due for the return for the year is due, must be

### Conclusion

Accordingly, we AFFIRM the judgment of the district court that dismissed the taxpayer Evans' suit for refund.

AFFIRMED.

### Appendix

Internal Revenue Code of 1954 (26 U.S.C.):
SEC. 6655. FAILURE BY CORPORATION TO PAY ESTIMATED INCOME TAX.

(a) [as amended by Sec. 7(c), Act of January 3, 1975, Pub.L. No. 93–625, 88 Stat. 2108] *Addition to the Tax.*—In case of any underpayment of estimated tax by a corporation, except as provided in subsection (d), there shall be added to the tax under chapter 1 for the taxable year an amount determined at an annual rate established under Section 6621 upon the amount of the underpayment (determined under subsection (b)) for the period of the underpayment (determined under subsection (c)).

(b) [as amended by Sec. 103(c)(1), Revenue and Expenditure Control Act of 1968, *supra*] *Amount of Underpayment.*—For purposes of subsection (a), the amount of the underpayment shall be the excess of—

(1) The amount of the installment which would be required to be paid if the estimated tax were equal to 80 percent of the tax shown on the return for the taxable year, or if no return was filed, 80 percent of the tax for such year, over

(2) The amount, if any, of the installment paid on or before the last date prescribed for payment.

(c) *Period of Underpayment.*—The period of the underpayment shall run from the date the installment was required to be paid to whichever of the following dates is the earlier—

(1) The 15th day of the third month following the close of the taxable year.

(2) [as amended by Sec. 122(c)(1), Revenue Act of 1964, Pub.L. No. 88–272, 78 Stat. 19] With respect to any portion of the underpayment, the date on which such portion is paid. For purposes of this paragraph, a payment of estimated tax on any installment date shall be considered a payment of any previous under-

considered "the return" for the year, or that the unambiguous statutory term "return for the taxable year" is somehow thereby made ambiguous and subject to judicial construction.

**5.** We note also that § 6655(b)(1) provides that the actual liability for the tax year shall be the basis for determining the underpayment only "if no return was filed." When a return is filed, instead the underpayment is determined by "the tax shown on the return for the taxable year."

payment only to the extent such payment exceeds the amount of the installment determined under subsection (b)(1) for such installment date.

(d) *Exception.*—Notwithstanding the provisions of the preceding subsections, the addition to the tax with respect to any underpayment of any installment shall not be imposed if the total amount of all payments of estimated tax made on or before the last date prescribed for the payment of such installment equals or exceeds the amount which would have been required to be paid on or before such date if the estimated tax were whichever of the following is the lesser—

(1) [as amended by Sec. 103(e)(1), Revenue and Expenditure Control Act of 1968, *supra*] The tax shown on the return of the corporation for the preceding taxable year, if a return showing liability for tax was filed by the corporation for the preceding taxable year and such preceding year was a taxable year of 12 months. * * *