WILLIAM C. SAMPSON AND LUCILLE A. SAMPSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sampson v. Commissioner
Docket No. 3394-81.
United States Tax Court
T.C. Memo 1986-231; 1986 Tax Ct. Memo LEXIS 373; 51 T.C.M. (CCH) 1148; T.C.M. (RIA) 86231; June 9, 1986. William C. Sampson and Lucille A. Sampson, pro se. Nancy B. Herbert, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined deficiencies in petitioners' Federal income taxes and additions to the tax as follows: Additions to Tax
Year
Deficiency
[1] Sec. 6653(a) Sec. 6654(a)
1975
$7,138.45
$356.92
$308.25
1976
7,653.49
382.67
272.79
1977
7,998.50
399.93
284.62
1978
6,665.70
333.29
212.79
1979
8,915.90
445.80
371.38
*376 After concessions, [2] the issues for decision are (1) whether this Court has jurisdiction to make a determination when such determination requires consideration of a party who is not before the Court; (2) whether timely notices of deficiency were issued to petitioners for taxable years 1975 and 1976; (3) whether income reported on the Federal income tax returns of The Lucille A. Sampson Pure Equity Trust is properly reportable by petitioners on their Federal income tax returns for the years at issue; (4) whether petitioners are liable for self-employment taxes in the amount determined by respondent under section 1401 for each of the years at issue; (5) whether petitioners are liable for an addition to the tax under section 6653(a) for each of the years at issue; (6) whether petitioners are liable for an addition to the tax under section 6654 for each of the years at issue; and (7) whether damages should be awarded to the United States under section 6673. *377 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners resided in Middletown, Ohio, when they filed their petition in this case. Petitioner William C. Sampson ("William") practiced as an osteopath during the years at issue. William rendered his osteopathic services through W. Clifford Sampson, Inc. (the "Corporation"). The Corporation was incorporated on September 15, 1975. The Corporation filed Forms 1120, U.S. Corporation Income Tax Returns, for the short taxable year September 15, 1975, through December 31, 1975, and thereafter for the successive calendar years through 1979. For the taxable year ending December 31, 1975, the Corporation reported "other deductions" nominated as "professional fees" in the amount of $6,500.00. In succeeding taxable years the Corporation reported the following amounts as "Cost of goods sold" nominated as "professional services" or "professional fees": Year
Amount
1976
$23,765.24
1977
24,280.20
1978
24,296.00
1979
26,485.00
The Corporation reported no taxable income for any of its taxable *378 years through 1978 and reported $311.00 in taxable year 1979. On April 1, 1975, petitioner Lucille A. Sampson ("Lucille"), as grantor, executed a trust agreement. [3] The trust created by the agreement was nominated as "The Lucille A. Sampson Pure Equity Trust" (the "Trust"). The trustees named in the Trust agreement were Lelah M. Truxal and William. However, Lelah M. Truxal ceased to serve as a trustee and was replaced by Lucille and the two children of William and Lucille, Bruce and Diane. William, Lucille, Bruce and Diane served as trustees during each of the years at issue. These same persons were beneficiaries of the Trust during the years at issue. The property transferred to the Trust on execution of the agreement was petitioners' residence. On April 10, 1975, the Trust purportedly executed an agreement with William. This document provided, in pertinent part: The TRUST, realizing full well that it cannot practise [sic] Osteopathy, wishes to obtain the services of Dr. *379 W. C. Sampson as an Osteopathic Physician. Dr. W. C. Sampson desires to give his skill and expertise as an Osteopathic Physician to the Trust so that he may perform services on behalf of the TRUST. THE TRUST and Dr. W. C. Sampson do covenant and agree as follows: 1. The TRUST agrees to furnish the following to Dr. W. C. Sampson for his services as an Osteopathic Physician to the TRUST. a) The use of the TRUST properties with paid utilities for living and working quarters for other uses than TRUST use. b) The use of a telephone listed in his name for other than TRUST business, and payment of the telephone bill. c) The use of a leased automobile for other than TRUST business. 2. Dr. W. C. Sampson agrees to give his professional services to the TRUST for the above listed benefits of paragraph 1. * * * 5. Dr. W. C. Sampson recognizes that the TRUST shall manage its business affairs exclusively and the relationship between the TRUST and Dr. W. C. Sampson shall be that of Independent Contractor. On September 16, 1975, the Trust purportedly executed an agreement with the Corporation. This document provided, in pertinent part: 1. The TRUST agrees to furnish the expertise *380 and knowledge of Dr. W. C. Sampson, D.O. to the COMPANY. The COMPANY accepts the expertise and knowledge of Dr. W. C. Sampson, D.O. The services to be provided shall be understood by both parties to consist of the skills denoted an Osteopathic Physician licensed by the State of Ohio. 2. The COMPANY cannot control or supervise the work or services to be performed by Dr. W. C. Sampson. The TRUST agrees that Dr. W. C. Sampson shall devote his time and effort to the business of the COMPANY and all remuneration earned belongs to the COMPANY. 3. The TRUST shall be compensated for the services of Dr. W. C. Sampson to the COMPANY, a fee equaling 82% per annum of the income earned for the COMPANY by Dr. W. C. Sampson. That fee, in part or in whole, shall be paid on demand of the TRUST. Any modification of this fee shall be in writing and agreed to by both parties. The Trust filed Forms 1041, U.S. Fiduciary Income Tax Returns, for the short taxable year April 1, 1975, through December 31, 1975, and thereafter for the successive calendar years through 1979. In these returns the Trust reported the following amounts as income from the Corporation: Year
Amount
1975
$12,500.00
1976
23,765.24
1977
24,280.20
1978
24,296.00
1979
26,485.00
*381 In addition the Trust reported business receipts in the following amounts: Year
Amount
1975
$18,049.70
1976
31,414.67
1977
38,222.73
1978
29,505.75
1979
28,993.00
During the same years the Trust claimed deductions relating to the maintenance and operation of the residence in which petitioners lived and for medical expenses for petitioners and their family. The Trust also reported net distributions to the beneficiaries in the following amounts: Year
William and Lucille
Children
1975
$1,958.69
$839.44
1976
8,389.79
3,595.64
1977
5,532.94
2,371.28
1978
4,314.00
1,848.00
1979
3,733.00
1,600.00
The Trust reported no taxable income in any of its taxable years through 1979. The 1975 and 1976 Trust Federal income tax returns were prepared by Jay Q. Truxal, C.P.A. Petitioners filed timely, joint Forms 1040, U.S. Individual Income Tax Returns, for the years 1975 through 1979. On these returns petitioners reported income from trust distributions identical to the amounts reflected as distributions to them by the Trust. In 1975 petitioners also reported income from a trade or business in the amount of $5,646.29, and *382 in 1979 petitioners also reported income from wages or salary in the amount of $1,960.00. The only other income reported in any of these years were small amounts of interest income, an estate distribution in the amount of $48.93, a taxable capital gain distribution in the amount of $2.00, and automobile rental income. William reported his occupation as doctor or osteopath on each return.Petitioners' 1975 and 1976 Federal income tax returns were prepared by Jay Q. Truxal, C.P.A. On January 26, 1981, respondent issued a notice of deficiency to petitioners relating to taxable years 1975 through 1979. The deficiencies reflected in the notice of deficiency were, in substantial part, due to income which respondent maintains was improperly reported by the Trust. The income which respondent determined should have been reported by petitioners and not by the Trust was identical in amount to the income reported on the Trust returns without reduction except for the cost of merchandise. In their petition filed on February 23, 1981, petitioners claimed that the full amount of the deficiencies and additions to tax determined by respondent are in controversy but did not present clear and concise *383 assignments of error committed by respondent nor any facts on which such error might be based. Instead petitioners raised meritless arguments regarding the purported Constitutional "errors" committed by respondent and the "arbitrary" and "capricious" actions of respondent. The only issue of any merit raised in the petition is the timeliness of the notice of deficiency for the years 1975 through 1977. As the case progressed, petitioners failed to make any meaningful attempt to cooperate in preparing this case for trial. On March 5, 1982, petitioners filed a motion characterized as a motion for grant of immunity which was denied on March 19, 1982. On April 16, 1982, petitioners filed a motion to produce which was denied on April 19, 1982. On April 26, 1982, petitioners filed a motion to compel answers to interrogatories which was withdrawn by motion granted October 18, 1983. On April 27, 1982, petitioners filed a motion for summary judgment claiming, in part, that respondent's action in issuing the notice of deficiency was "ultra vires." This motion was denied by order dated November 8, 1984. Prior to the date of this order, petitioners had filed a motion to vacate the notice *384 setting the hearing on their motion for summary judgment. This motion was denied on May 7, 1982. On May 14, 1982, petitioners filed yet another motion for summary judgment, this time based on their argument that the notice of deficiency as to the taxable years 1975 through 1977, inclusive, was untimely. This motion was denied by order dated November 8, 1984. On October 19, 1983, petitioners filed a motion to dismiss the case with prejudice to respondent. This motion was denied on October 21, 1983. On October 26, 1983, petitioners renewed their motions for summary judgment. These motions were denied by Order dated November 8, 1984. Finally, on December 10, 1985, petitioners filed a motion apparently seeking an order by the Court denying consideration of matters relating to the Trust.This motion was denied by Order dated January 23, 1986. Petitioners renewed their motion and the second motion was denied on February 4, 1986. Petitioners are not unfamiliar with this Court. Currently, they have another case pending before the Court. As in this case, there is an issue relating to the Trust. OPINION Initially, we must consider petitioners' jurisdictional objection. Petitioners, *385 in their "Motion to Dismiss" filed on December 10, 1985, raised a similar argument. By Order dated January 23, 1986, we denied petitioners' motion. In the accompanying Memorandum Sur Order we explained: Our jurisdiction to make a determination is limited by statute. Sec. 7442, Internal Revenue Code of 1954, as amended. Except for certain declaratory judgment and disclosure actions, the issuance of a notice of deficiency or notice of liability is a prerequisite to Tax Court jurisdiction. Medeiros v. Commissioner,77 T.C. 1255, 1260 (1981). However, the fact that we do not have jurisdiction to determine a particular taxpayer's liability does not preclude consideration of that taxpayer in relation to a determination of the liability of a taxpayer for which we do have jurisdiction. See, e.g., Lerner v. Commissioner,71 T.C. 290 (1978); Malkan v. Commissioner,54 T.C. 1305 (1970); Friedman v. Commissioner,41 T.C. 428 (1963), affd. 346 F.2d 506 (6th Cir. 1965). Here, we do not *386 have jurisdiction to make a determination as to the fact or amount of any deficiency in the Federal income tax liability of the trust as the trust is not properly before us as a party. We may, however, to the extent relevant to the determination of any deficiency for the parties who are before us, consider issues relating to the trust. There has been no change in our jurisdictional authority since the date of the Memorandum Sur Order, and we must reject petitioners' argument that we are without jurisdiction to consider issues relating to the Trust. [4]
*387 We must next consider petitioners' claim that the notice of deficiency was not timely as to 1975 and 1976. Petitioners have the burden of proving that the normal period of limitation expired prior to the issuance of the notice of deficiency, and respondent has the burden of proving the application of any exception to the normal period of limitation. Miami Purchasing Service Corp. v. Commissioner,76 T.C. 818, 823 (1981); Robinson v. Commissioner,57 T.C. 735, 737 (1972). Generally, the notice of deficiency must be issued within three years after the return was filed. Sec. 6501(a); sec. 6213(a). Section 6501(e) provides an exception to the general rule and states, in pertinent part: (e) SUBSTANTIAL OMISSION OF ITEMS.--Except as otherwise provided in subsection (c)-- (1) INCOME TAXES.--In the case of any tax imposed by subtitle A-- (A) GENERAL RULE.--If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed * * * at any *388 time within 6 years after the return was filed. For purposes of this subparagraph-- (i) In the case of a trade or business, the term "gross income" means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to diminution by the cost of such sales or services; and (ii) In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary or his delegate of the nature and amount of such item. The Supreme Court enunciated the basic test which was codified in section 6501(e)(1)(A)(ii). Colony, Inc. v. Commissioner,357 U.S. 28 (1958). In that case the Supreme Court stated: We think that in enacting [section] 275(c) [now section 6501(e)] Congress manifested no broader purpose than to give the Commissioner an additional two years [now three years] to investigate *389 tax returns in cases where, because of a taxpayer's omission to report some taxable item, the Commissioner is at a special disadvantage in detecting errors. In such instances the return on its face provides no clue to the existence of the omitted item. On the other hand, when, as here, the understatement of a tax arises from an error in reporting an item disclosed on the face of the return the Commissioner is at no such disadvantage. And this would seem to be so whether the error be one affecting "gross income" or one, such as overstated deductions, affecting other parts of the return. * * * [Emphasis added.] Colony, Inc. v. Commissioner,supra at 36. We have further stated that "this does not mean simply a 'clue' which would be sufficient to intrigue a Sherlock Holmes" but "neither does it mean a detailed revelation of each and every underlying fact." George Edward Quick Trust v. Commissioner,54 T.C. 1336, 1347 (1970), affd. 444 F.2d 90 (8th Cir. 1971). In some circumstances a related tax return may be considered. See, e.g., Davenport v. Commissioner,48 T.C. 921, 928 (1967); Roschuni v. Commissioner,44 T.C. 80, 84 (1965). *390 Here, even assuming that the Trust returns are properly considered, petitioners' disclosure of the fact of income from the Trust was not sufficient to give respondent a clue as to the existence of additional omitted income. Neither the Trust returns nor petitioners' individual returns disclosed the fact that William was purportedly employed by the Trust as an independent contractor. [5] The Trust returns did state that the Trust was engaged in a business, but did not identify which business it was engaged in. The only hint which respondent had that petitioners had omitted items of gross income was the fact that William's profession was listed as osteopath on petitioners' 1976 income tax return and yet there was no entry for income from salary or wages or trade or business income. We decline to find that this was a sufficient "clue" as to the existence of the omitted income. The amount of gross income reported on the Trust income tax returns was $12,500.00 as income from the *391 Corporation and $18,049.70 as business receipts in 1975 and $23,765.24 as income from the Corporation and $31,414.67 as business receipts in 1976. As subsequently discussed, we have determined that this income was actually earned by William. The amount of gross income reported on petitioners' income tax returns was $19,884.46 in 1975 and $8,389.79 in 1976. Clearly, the amount omitted from petitioners' gross income was in excess of 25 percent of the amount of gross income stated in the returns. Respondent did not have a sufficient clue as to the omitted income. Consequently, the six year statute of limitations is applicable for petitioners' taxable years 1975 and 1976. Petitioners' returns are deemed to have been filed no earlier than April 15, 1976, and April 15, 1977, respectively, pursuant to section 6501(b)(1), and a notice of deficiency issued on January 26, 1981, is within six years of both dates. We must next consider whether the income reported on the Federal income tax returns of the Trust is properly reportable on petitioners' individual income tax returns for each of the years at issue. This case presents yet another situation in which petitioners have used a trust *392 device to avoid the incidents of taxation on their earnings. See, e.g., Hanson v. Commissioner,696 F.2d 1232 (9th Cir. 1983); Schulz v. Commissioner,686 F.2d 490 (7th Cir. 1982); Vnuk v. Commissioner,621 F.2d 1318 (8th Cir. 1980); Vercio v. Commissioner,73 T.C. 1246 (1980); Markosian v. Commissioner,73 T.C. 1235 (1980). [6]
A taxpayer cannot escape taxation by an assignment of his or her income to another entity. Lucas v. Earl,281 U.S. 111, 114-115 (1930). A fundamental principle of our income tax laws is that income is taxed to the one who earns it, Commissioner v. Culbertson,337 U.S. 733, 739-740 (1949), and taxation cannot be avoided by diverting the income to another entity, for example to a trust, as in the instant case. United States v. Basye,410 U.S. 441, 450 (1973). A key factor *393 in determining whether compensation for services performed by an individual is in fact earned by the individual and not by a trust entity for which these services are purportedly performed is the existence of ultimate control and direction over the earning of the compensation. Vercio v. Commissioner,supra at 1254. The Courts will look beyond mere "paper transactions" which have no effect on economic reality. Markosian v. Commissioner,supra at 1241. Here, it is clear that nothing was changed by the interposition of the Trust between petitioners and William's osteopathic practice except the manner and amount of income which petitioners reported for Federal income tax purposes. There is absolutely no evidence in the record that any formalities other than signing the documents which were admitted into evidence and submitting separate Federal income tax returns for the Trust were undertaken. The persons who were intended to benefit from the Trust were also the trustees of the Trust. There was no independent fiduciary who might require that the Trust terms were complied with. In addition petitioners continued to live in their residence *394 which had been transferred to the Trust and to pay their living expenses, albeit now from the Trust. Finally, it is clear that William had complete control and direction over the income which was earned by his osteopathic services. Pursuant to the purported agreement between the Trust and the Corporation, the Trust was to receive 82 percent of the income earned by William. The purported agreement between the Trust and William essentially provided that the Trust would pay petitioners' living expenses as compensation for the services which he provided to the Corporation. Under these arrangements, it would be William's decision as to whether he wished to perform the services which would generate income for the Corporation and the Trust and ultimately result in the payment of petitioners' living expenses. Under these circumstances we can only conclude that William was the true earner of the income reported on the Federal income tax returns of the Trust. Although the Trust claimed deductions which were disallowed by respondent, petitioners offered no evidence that these deductions represented anything other than nondeductible, personal expenditures. Consequently, we sustain respondent's *395 determination that William actually earned the income reported on the income tax returns of the Trust and his disallowance of deductions claimed with respect to that income. We must next consider whether petitioners are liable for self-employment taxes attributable to the income reported by the Trust. Section 1401 provides for a tax on the self-employment income of every individual. "Self-employment income" is defined generally as "the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business." Secs. 1402(a); 1402(b). The amount of self-employment income subject to the tax is limited to $14,100.00 in 1975, $15,300.00 in 1976, $16,500.00 in 1977, $17,700.00 in 1978, and $22,900.00 in 1979. Sec. 1402(b). Generally, "employees" are not subject to the imposition of the self-employment taxes. Here, we have concluded that William had additional net income attributable to his osteopathic practice which in each year exceeded the limitation for self-employment *396 taxes. William did not argue that he received this income as an employee. Consequently, we sustain respondent's determination as to the additional self-employment tax liability for each of the years at issue. We must next consider whether petitioners are liable for the addition to the tax under section 6653(a) for each of the years at issue. Section 6653(a) provides for an addition to the tax if any part of any underpayment is due to negligence or intentional disregard of the rules and regulations. Respondent's determination that a part of the underpayment for each year was due to negligence is presumptively correct. Magill v. Commissioner,70 T.C. 465, 479 (1978), affd. 651 F.2d 1233 (6th Cir. 1981). Petitioners "cannot avoid [their] duty to file accurate returns simply by shifting the responsibility to [their] agents." Enoch v. Commissioner,57 T.C. 781, 802 (1972). Where tax avoidance is attempted through a family trust device at least one court has stated that "[n]o reasonable person would have trusted this scheme to work. *397 " Hanson v. Commissioner,supra at 1234. Here, a certified public accountant prepared petitioners' 1975 and 1976 Federal income tax returns and the 1975 and 1976 Federal income tax returns of the Trust. The manner in which income and deductions were reported on these returns and the other returns filed by petitioners and the Trust resulted in deductions for petitioners' nondeductible personal expenditures for their residence and medical expenses on the Trust's Federal income tax returns. These amounts were not reported as income on petitioners' Federal income tax returns. In effect the manner in which the income and deductions were reported caused petitioners' income, in part, to "disappear." The record does not indicate whether the certified public accountant who prepared the 1975 and 1976 returns was aware of the underlying facts. [7] However, William was an educated individual and was undoubtedly aware that he was not properly reporting his income and deductions in any of the years at issue.Consequently, we must sustain respondent's determination that petitioners are liable for the addition to tax under section 6653(a) for each of the years at issue. *398 We must next consider whether petitioners are liable for the addition to tax under section 6654(a). Section 6654 provides, in pertinent part: (a) ADDITION TO THE TAX.--In the case of any underpayment of estimated tax by an individual, * * *, there shall be added to the tax under chapter 1 and the tax under chapter 2 for the taxable year an amount determined at an annual rate established under section 6621 [prior to July 1, 1975, the rate was six percent per annum] upon the amount of the underpayment (determined under subsection (b)) for the period of the underpayment (determined under subsection (c)). (b) AMOUNT OF UNDERPAYMENT.--For purposes of subsection (a), the amount of the underpayment shall be the excess of-- (1) The amount of the installment which would be required to be paid if the estimated tax were equal to 80 percent * * * of the tax shown on the return for the taxable year, * * * over (2) The amount, if any, of the installment paid on or before the last date prescribed for such payment. [Emphasis added.] "Tax shown on the return" does not mean the tax *399 based on actual income for the year as ultimately determined, cf. Evans Cooperage Co., Inc. v. United States,712 F.2d 199, 205 (5th Cir. 1983), (involving section 6655) and a similar interpretation is applicable to section 6654(b) which also uses "the tax shown on the return" as the basis for determining the installment due. [8]
Here, petitioners reported the following amounts as their tax liability for the years at issue: Year
Amount
1975
$632.06
1976
270.24
1977
1978
1979
Respondent determined additions to the tax under section 6654(a) for each of these years. However, it is clear that respondent did not properly compute the amount of the underpayment based on the "tax shown on the return for the taxable year." Consequently, we do not sustain respondent's determination as to the amount of the addition to the tax under section 6654(a). [9]
Finally, we must consider whether damages should be awarded to the United States under section 6673. Section 6673 *400 provides: Whenever it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless, damages in an amount not in excess of $5,000 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as part of the tax. Section 6673 is applicable to any action or proceeding pending in this Court on or after November 15, 1985. Sec. 160, Deficit Reduction Act of 1984, Pub. L. 98-369, 96 Stat. 696. Here, we reluctantly conclude that it is not appropriate to award damages to the United States. While we believe that petitioners, in substantial part, did not intend to proceed with a meritorious action in this Court, we note that there was a jurisdictional issue for taxable years 1975 and 1976. [10]
To reflect the foregoing, Decision *401 will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years at issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioners expressly concede that the notice of deficiency issued by respondent for the taxable year 1977 was timely. In addition petitioners have not claimed error with respect to the investment tax credit amounts disallowed by respondent for taxable years 1976 through 1979, the trade or business expenses disallowed by respondent for taxable year 1975, or the depreciation deductions disallowed by respondent for taxable years 1977 through 1979. Consequently, these issues are deemed conceded. Rule 34(b)(4). In any event petitioners have introduced no evidence as to these items and have failed to meet their burden of proof. Rule 142(a).↩
3. Our use of the term trust is not to be construed as a finding or holding that the Lucille A. Sampson Pure Equity Trust is a trust which is valid for either Federal tax or State law purposes.↩
4. In a prior proceeding involving this case, we denied the Trust's petition to intervene. Sampson v. Commissioner,81 T.C. 614 (1983). In that case we stated at 617-618: In seeking to intervene herein, the trust is seeking to inject into the present case issues relating "to the rights and interests of the Trust, particularly, questions which address the very existence and propriety of the Trust." The trust also seeks to raise issues herein concerning the individual property rights and interests of trustees and beneficiaries, presumably including the present petitioners, in and to trust property. None of these matters, however, are properly before this Court as issues, nor do they form a necessary part of any of the issues which we must decide in rendering a decision in this case. [Footnote reference omitted.]↩
5. The fact that William was listed as a nominee in these returns was not sufficient to disclose the fact of employment as this designation could simply mean that bank accounts were held in his name.↩
6. Also see Whitesel v. Commissioner,T.C. Memo. 1983-9, affd. without published opinion 745 F.2d 59↩ (6th Cir. 1984).
7. It is unclear whether Jay Q. Truxal, the certified public accountant who prepared the 1975 and 1976 Federal income tax returns, and Lelah M. Truxal, one of the original trustees of the Trust, were also petitioners in Truxal v. Commissioner,T.C. Memo. 1982-616↩, a case involving a similar trust arrangement to the one under consideration.
8. See Rev. Rul. 83-36, 1983-1 C.B. 358↩.
9. The computation of the amount of the addition to the tax under sec. 6654(a)↩ shall be made pursuant to Rule 155.
10. Adjustments in petitioners' favor will not necessarily preclude an award of damages. See Piche v. Commissioner,T.C. Memo. 1986-29↩.