# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-60007

United States Court of Appeals
Fifth Circuit

**FILED**

August 4, 2014

Lyle W. Cayce
Clerk

HARRY E. CANTRELL, JR.

Petitioner-Appellant

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee

Appeal from a Decision of the
United States Tax Court
No. 7095-05

Before DAVIS, SMITH, and BENAVIDES, Circuit Judges.

PER CURIAM:*

Appellant challenges the Tax Court's determination of his tax liability for tax year 2001, as well as its finding that the IRS did not abuse its discretion in sustaining the proposed collection efforts. We find no error and affirm.

I.

In 2001, Petitioner-Appellant Harry Cantrell ("Cantrell") operated the Law Offices of Harry E. Cantrell while also teaching criminal law at the Southern University Law Center in Baton Rouge, La. On October 18, 2002, Cantrell and his former spouse filed a joint Federal income tax return for the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-60007

2001 tax year reporting adjusted gross income of $1,535,679, but failed to pay any of the $608,846 in tax liability reported on the return.[1]

On October 21, 2003, the IRS sent Cantrell and his former spouse a Notice of Intent to Levy related to his 2001 tax liability. On October 30, 2003, the IRS sent Cantrell and his former spouse a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under Internal Revenue Code § 6320, related to his 2001 tax liability. Cantrell then timely requested a collection due process ("CDP") hearing relating to the two notices and filed an Amended Tax Return via Form 1040X for the 2001 tax year. In his amended return, Cantrell reported $12,190 in Itemized Deductions on Schedule A, and $879,234 Business Expenses on Schedule C. Cantrell's total tax liability on his proposed 2001 amended return was $243,561.

On June 28, 2004, IRS Appeals Officer Catherine Smith ("AO Smith") contacted Cantrell to discuss his amended return and to schedule a CDP hearing, as he requested. The next day, AO Smith sent a fax to Cantrell, scheduling the CDP hearing and also providing Cantrell with a payoff amount which matched the tax liability reported on Cantrell's amended return. On July 15, 2004, Cantrell wrote a check for the amount stated in the fax: $312,624.[2] After meeting with Cantrell, AO Smith forwarded his amended return for examination by Revenue Agent Earline Brown ("RA Brown").

In a letter dated December 8, 2004, RA Brown informed Cantrell that his amended return was under examination. RA Brown requested a meeting

---

[1] During the course of the proceedings, Cantrell's wife received innocent-spouse relief from joint and several liability under § 6015 of the Internal Revenue Code with respect to the 2001 tax liability. Therefore, this case concerns liability only with respect to Cantrell.

[2] This amount included the tax liability reported in the amended return ($243,561), in addition to an estimated tax addition ($1,005), a failure to timely pay addition ($34,099) and interest ($33,960).

2

No. 13-60007

with Cantrell to discuss three preliminary items on his amended return: repair expenses, vehicle expenses, and charitable contribution deductions. That same day, Cantrell and his representative left phone messages with RA Brown requesting that she return their calls.

From December 13, 2004, through January 14, 2005, RA Brown, Cantrell, and Cantrell's representative exchanged a number of phone messages in unsuccessful attempts to schedule a meeting. On January 19, 2005, RA Brown called Cantrell to notify him that she planned to recommend rejection of his amended 2001 tax return because Cantrell had failed to schedule a meeting. Soon after, Cantrell's secretary contacted RA Brown to tell her that Cantrell would call her on January 24, 2005. At that time, RA Brown advised Cantrell's secretary that if he did not call on January 24, the case would be returned to AO Smith, and RA Brown would recommend rejection of his amended return. Cantrell failed to call and, on January 25, 2005, RA Brown returned the case to AO Smith and recommended rejection of the amended return. During this time, Cantrell never provided any documentation to support the deductions claimed on his amended return.

On March 30, 2005, the IRS issued a notice of determination sustaining the rejection of the amended return, and seeking payment of the full amount of taxes reported due on Cantrell's original 2001 tax return. In April 2005, Cantrell filed a petition in the United States Tax Court alleging that he was denied a reasonable opportunity to defend his amended return. Trial was held before the Tax Court on December 5, 2011, at which Cantrell and his tax preparer for the 2001 tax year testified. After trial and submission of post-trial briefs, the Tax Court issued its "Memorandum Finding of Facts and Opinion" affirming the IRS's rejection of Cantrell's 2001 amended return, the amount of

3

No. 13-60007

Cantrell's tax liability as reported in his initial return, and the decision by the IRS to proceed with collection of his 2001 tax liability. Cantrell appeals.

## II.

We review decisions of the Tax Court "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury."[3] "Findings of fact are reviewed for clear error and conclusions of law are reviewed de novo."[4]

## III.

Cantrell challenges the decision of the Tax Court on two grounds. First, he argues that the Tax Court erred in refusing to find that his payment of $312,624 on July 15, 2004, which was the amount due pursuant to his amended return, constituted the acceptance of an offer to settle his federal income tax liability for the year of 2001. Therefore, according to Cantrell, no subsequent investigation or collection of liability should have taken place as the case was concluded. Relatedly, Cantrell argues that the Tax Court abused its discretion in agreeing with the IRS decision to continue processing, and eventually reject, his amended return.

Relying exclusively upon the general contractual principles of offer and acceptance, Cantrell claims that the letter he received from AO Smith on June 29, 2004, demanding payment of the amount Cantrell declared he owed in his amended return constituted an offer to settle his tax liability. He contends that the IRS's acceptance of this check constituted an agreement to settle his 2001 tax liability. These contentions are baseless. Consideration of an offer-in-compromise submitted by a taxpayer in the context of a CDP hearing is

---

[3] 26 U.S.C. § 7482(a)(1); *Green v. Comm'r*, 507 F.3d 857, 866 (5th Cir. 2007).

[4] *Green*, 507 F.3d at 866.

No. 13-60007

governed by § 7122 of the Internal Revenue Code ("IRC").[5] Section 7122 of the Internal Revenue Code "sets out the exclusive method of compromising tax liabilities."[6] Cantrell does not argue that he complied with § 7122 in executing the purported settlement agreement. In addition, the applicable regulations do not authorize Appeals Officers like AO Smith to make a bona fide settlement agreement on behalf of the IRS.[7] It is well established that "the Government is not bound by the unauthorized acts of its agents,"[8] and Cantrell offers no support for the position that AO Smith had the authority to settle his tax liability. Thus, we find no error and decline to disturb the Tax Court's decision based upon any purported settlement agreement between Cantrell and AO Smith as representative of the IRS.

Second, Cantrell argues that the Tax Court erred in finding the IRS did not abuse its discretion when it proceeded with its collection action on Cantrell's tax liability pursuant to his original 2001 tax return. We review this finding for an abuse of discretion, and Cantrell has failed to carry this burden. The IRS has the discretion to accept an amended return; it is not required to do so.[9] Cantrell bears the burden of clearly establishing his entitlement to

---

[5] *See* 26 U.S.C. § 7122.

[6] *Christopher Cross, Inc. v. United States*, 461 F.3d 610, 612 (5th Cir. 2006) (citing *Olsen v. United States*, 414 F.3d 144, 153 (1st Cir. 2005)). *See also Bowling v. United States*, 510 F.2d 112, 113 (5th Cir. 1975). Because § 7122 is the exclusive method of entering into an offer-in-compromise, arguments, like Cantrell's, which are based upon the general contractual principles of accord and satisfaction cannot be used to impute a compromise settlement. *See Bowling*, 510 F.2d at 113.

[7] *See* Treas. Reg. § 601.106(a); IRS Deleg. Order No. 66, Rev. 15, 1992 WL 12007248 (Jan. 23, 1992) (Authority of Appeals in Protested Tax Court Cases). Pursuant to these regulations, only a handful of IRS Appeals Officers can make bona fide settlement agreements, including Chiefs, Assistant Chiefs, and Appeals Team Case Leaders. Settlement officers (aka Appeals Officers) can only recommend a binding settlement to their superiors.

[8] *Ferguson v. F.D.I.C.*, 164 F.3d 894, 899 (5th Cir. 1999) (citations omitted).

[9] *Jones v. Comm'r*, 338 F.3d 463, 466 (5th Cir. 2003) (citing *Evans Cooperage Co. v. United*

5

No. 13-60007

each deduction he claims in his amended return.[10] Cantrell failed to provide any documents or records in support of the deductions he claimed on his amended return, despite multiple opportunities to do so. Cantrell offered the testimony of the individual who prepared his amended return, who stated that Cantrell's bookkeeper had documents which supported the deductions. The bookkeeper never testified, and the documents were never produced. In addition, Cantrell failed to schedule a meeting with RA Brown despite repeated telephone calls and attempts to contact him. When given a final deadline to contact RA Brown regarding his amended return, Cantrell ignored it. Under these circumstances, the Tax Court did not abuse its discretion in agreeing that the IRS properly rejected Cantrell's amended return and proceeded with the collection of his tax liability in the principal amount of $608,846 as reported on his original 2001 return (subject to a credit for the amount already paid by Cantrell). We therefore affirm the judgment of the Tax Court.

AFFIRMED.

---

*States*, 712 F.2d 199, 204 (5th Cir. 1983)). *See also Hillsboro Nat'l Bank v. Comm'r*, 460 U.S. 370, 380 n.10 (1983) (stating that acceptance of amended returns is "within the discretion of the Commissioner"); *Dover Corp. & Subsidiaries v. Commissioner,* 148 F.3d 70, 72–73 (2d Cir. 1998) ("There is simply no statutory provision authorizing the filing of amended tax returns, and while the IRS has, as a matter of internal administration, recognized and accepted such returns for limited purposes, their treatment has not been elevated beyond a matter of internal discretion.") (citations omitted).

[10] *See INDOPCO, Inc. v. Comm'r*, 503 U.S. 79, 84 (1992) (quoting *Interstate Transit Lines v. Comm'r*, 319 U.S. 590, 593 (1943)).